John HAMPTON and Dorothy Hampton, Appellants,

v.

PARAMOUNT PICTURES CORPORA-
TION, and Eastman Kodak Company, Appellees.

No. 16486.

United States Court of Appeals
Ninth Circuit.
June 2, 1960.

Anthony V. Randles, Los Angeles, Cal., for appellants.

Meville B. Nimmer, Nimmer & Selvin, Beverly Hills, Cal., for appellees.

Before BARNES, HAMLEY, and JERTBERG, Circuit Judges.

HAMLEY, Circuit Judge.

This copyright infringement suit in which injunctive relief and damages were sought involves the silent motion picture film, "The Covered Wagon," produced in 1923. The plaintiff is Paramount Pictures Corporation which, through a predecessor corporation, holds the copyright by assignment from the original producer, Famous Players-Lasky Corporation. The defendants are John and Dorothy Hampton, herein referred to as Hampton.

In addition to answering Paramount's complaint Hampton filed a complaint as third-party plaintiff against Eastman

Kodak Company and Kodascope Libraries, Inc., as third-party defendants. In this third-party complaint, based on asserted breach of warranty and fraud, Hampton sought a monetary recovery equal to whatever damages the court might award Paramount against Hampton.

The cause was tried to the court without a jury. In the judgment thereafter entered Hampton was enjoined from exhibiting "The Covered Wagon" for profit without the consent of Paramount. No damages were awarded, and the third-party complaint against Eastman and Kodascope was dismissed without prejudice.

Hampton appeals, contending: (1) By contract between Paramount and Kodascope the latter had been given power to sell a 16 mm. print of "The Covered Wagon" to Hampton for commercial exhibition; (2) Paramount abandoned its rights to the release of substandard-size prints of the film in question; (3) Paramount is estopped to enjoin the exhibition of the film by Hampton; and (4) the action is barred because of laches on the part of Paramount.

On June 15, 1927, a predecessor of Paramount as assignee of the copyright entered into a written agreement with Kodascope, a subsidiary of Eastman. Under this agreement Kodascope was given certain rights to produce prints of certain films for "non-theatrical exhibitions." Eighteen films were transferred by this agreement, including "The Covered Wagon."

About 1930 silent films were considered obsolete for general commercial exhibitions. From that time on Kodascope rented and sold 16 mm. ("substandard") prints of these films without restriction. They were openly advertised in catalogs of Kodascope and many other distributors, and were openly sold and traded by Kodascope and other dealers, all without restriction.

On February 21, 1938, Hampton purchased from Kodascope a 16 mm. print of "The Covered Wagon." This print bore a notice of Paramount's copyright on the runner or leader film immediately preceding the film of the photoplay itself. Hampton used this print in road shows and subsequently in Hollywood. In 1942 Hampton built a special building known as the "Silent Movie Theater" for exhibiting 16 mm. prints or silent moving pictures in Hollywood. He has been showing such films there continuously since that time. "The Covered Wagon" was exhibited for profit at this theater on four occasions, as follows: three days in March 1942, six days in November 1948, seven days in January 1952, and seven days in April 1955.

Hampton exhibited not only "The Covered Wagon" at this theater, but also all of the other seventeen Paramount films which were transferred by the 1927 agreement. All eighteen of these films were known as "Kodascope film prints." One-week showings of these other films were exhibited on fifty-two separate occasions from 1942 to June 25, 1953. It was on or about the latter date, according to Paramount's answer to an interrogatory, that Paramount first learned of an instance in which a Kodascope film print was being used commercially. In answer to another interrogatory it was stated that on or about January 29, 1954, Paramount first learned of an instance in which a Kodascope print was sold.

On April 21, 1954, an attorney for Paramount telephoned to Hampton and told him that he had no right to exhibit "The Covered Wagon," and that any exhibition of that print would constitute an infringement of Paramount's copyright. Notwithstanding this notice Hampton commercially exhibited this moving picture at his Hollywood theater on April 27, 1955.

On April 28, 1955, Paramount sent Hampton a telegram notifying him to cease and desist from all further exhibition of "The Covered Wagon." The film was nevertheless continually shown for the remainder of the week. Paramount filed its complaint herein on December 22, 1955.

■ Hampton's first point on appeal is that the contractual arrangement between Paramount and Kodascope gave the latter power to sell a 16 mm. print of "The Covered Wagon" to Hampton for commercial exhibition. According to appellant, the contractual arrangement amounted to an assignment of the right to exhibit substandard films and was not a mere restricted license. Appellant contends that one who assigns, rather than licenses, the right to exhibit a film loses the power to restrict the use of the picture.

In support of his view that the contractual arrangement between Paramount and Kodascope was an assignment and not a license, appellant points to certain provisions contained in or absent from that contract. It is asserted that the contract contains no limitation as to time; a flat lump-sum payment was to be made for each film transferred; there was no requirement that outstanding prints and negatives were to be returned; no limitation was placed on the right to alter or abridge the films transferred; and the contract gave Kodascope exclusive territorial rights co-extensive with the rights of Paramount.

If the contract in question were ambiguous with regard to its nature as an assignment or a license or as to the purposes for which Kodascope might make reproductions, the fact that provisions of the kind referred to above were present or absent would be helpful in construing the instrument. Here, however, the contract expressly provides that Paramount "licenses" Kodascope to do certain things, thereby precluding a construction that there was an assignment. Moreover, the things Kodascope was licensed to do were to make reproductions of the photoplays "and to license the use thereof * * *," thereby precluding a construction that Paramount gave Kodascope the right to sell such reproductions.

If it be assumed, however, that the contract between Paramount and Kodascope was an assignment, and that Kodascope was thereby given power to sell reproductions, the fact remains that any such power to sell was not unlimited, but was expressly restricted. The power gained by Kodascope under the 1927 agreement was to make miniature reproductions of certain photoplays and to license the use thereof "for strictly non-theatrical exhibitions." It is not contended that appellant has been using "The Covered Wagon" for a nontheatrical exhibition.

The instant case is to be distinguished from Universal Film Mfg. Co. v. Copperman, 2 Cir., 218 F. 577, relied upon by appellant. It was there held that where the producer of a photoplay unconditionally sold a positive print thereof, the purchaser and his assigns acquired the right to exhibit such film notwithstanding the fact that the film was later copyrighted.

The sale in Universal was unconditional; it was made by the original owner prior to copyright; and, the sale was of a tangible positive print. In our case the sale was not by the original owner, but by a licensee thereof and was made after copyright. While Kodascope may have purported to unconditionally sell a positive print, its only authority from Paramount was to reproduce miniature prints and license them for nontheatrical use.

It follows that appellant's commercial exhibition of "The Covered Wagon" is not authorized by any power which Paramount placed in the hands of Kodascope by virtue of the 1927 contract.

■■ Appellant argues further, however, that Paramount abandoned its right to "The Covered Wagon" at least as to the release of 16 mm. films. In this connection appellant points out that Paramount failed for a period of over twenty-five years to take any action in regard to "The Covered Wagon" and the seventeen other films transferred by the 1927 agreement. Specific reference is made to the Paramount film "Grass" which has apparently been listed for years in publicized film lists, notwithstanding the fact that both Paramount and Eastman deny any record of transfer of rights. According to appellant, silent films were considered practically worthless after 1930,

and it was not until the advent of television that Paramount attempted to enforce its copyright.

Rights gained under the Copyright Law, 17 U.S.C.A. § 1 et seq., may be abandoned. Abandonment of such rights, however, must be manifested by some overt act indicative of a purpose to surrender the rights and allow the public to copy. National Comics Publications v. Fawcett Publications, 2 Cir., 191 F.2d 594, 598.

Evidence of such an overt act is here totally lacking. There was at most lack of action.

On this abandonment question appellant relies upon Egner v. E. C. Schirmer Music Co., 1 Cir., 139 F.2d 398. It there appeared that Edmund L. Gruber wrote and composed the words and music to "The Caissons Go Rolling Along" in 1908, but did not apply for a copyright until 1930. In the meantime, in 1921, Gruber gave others permission to include the song in a publication issued in that year. Affirming a judgment for the defendant in a copyright infringement suit, the court of appeals said: " * * * this [1921] publication and sale with the consent of Gruber amounted to such a general publication as to dedicate the song to the public and worked an abandonment of Gruber's common-law right to a copyright."

The facts of the instant case are entirely different than those which were present in Egner v. Schirmer. There was here no consent to public use prior to copyright. Nor did Paramount give Kodascope permission to sell the prints for commercial exhibition. We fail to see the relevance of appellant's reference to the "Grass" film.

In our opinion the trial court did not err in concluding that Paramount did not abandon its rights under "The Covered Wagon" copyright.

▮ Another argument advanced by appellant is based on the principle of estoppel. It is asserted that Paramount had knowledge or should have had knowledge of the open use and advertising of "The Covered Wagon" and the other seventeen films. By nevertheless remaining silent and failing to act, it is contended, Paramount has allowed appellant to change his position and is therefore estopped to enjoin the exhibition of the film.

Four elements must be present to establish the defense of estoppel: (1) The party to be estopped must know the facts; (2) he must intend that his conduct shall be acted on or must so act that the party asserting the estoppel has a right to believe it is so intended; (3) the latter must be ignorant of the true facts; and (4) he must rely on the former's conduct to his injury. California State Board of Equalization v. Coast Radio Products, 9 Cir., 228 F.2d 520, 525.

The trial court assumed the existence here of the first of these elements and made no mention of the third. However, the court held against appellant on the second and fourth elements. Specifically, the court found that there was no holding out by Paramount or any change of position by Hampton in reliance upon any act of omission by Paramount.

A holding out may be accomplished by silence and inaction. 3 Pomeroy's Equity Jurisprudence, 5th ed., § 818. But Paramount's assertion of copyright was clearly printed on the film in question in strict accordance with statutory requirements. Paramount had the right to assume that this printed assertion of right, which was flashed on the screen every time the film was shown, provided ample notice to Hampton of Paramount's interest in the film. Being charged with this notice, Hampton could easily have ascertained the facts by making inquiry of Paramount.

The doctrine of equitable estoppel does not erase the duty of due care and is not available for the protection of one who has suffered loss solely by reason of his own failure to act or inquire. See Rex v. Warner, 183 Kan. 763, 332 P.2d 572. The real cause of Hampton's trouble was not his lack of knowledge of Paramount's interest. Rather, it was his unwarranted

reliance on the assertion of a third party and his failure to use the means at hand to ascertain the extent of the interest asserted. See Marks v. Bunker, 165 Cal. App.2d 695, 332 P.2d 340.

We conclude that the trial court's finding of fact that there was no holding out by Paramount on which Hampton was entitled to rely is not clearly erroneous.

We reach the same conclusion with regard to the trial court's finding of fact that there was no change of position by Hampton in reliance upon any act of omission by Paramount. As stated above, any change of position by Hampton was in reliance upon the representations of the third parties and despite the notice conveyed to him by Paramount's assertion of right printed on each film. In so far as the building of Hampton's Silent Movie Theater is asserted to be a change of position, it must also be noted that this theater was not built to show just "The Covered Wagon" or just the eighteen Paramount films which Hampton acquired from Kodascope.

In view of the conclusions stated above it is unnecessary to decide whether under the evidence Paramount must be deemed to have had knowledge that Hampton was making unauthorized use of the films. As before stated, the trial court made no finding as to this, but predicated his holding on the issue of estoppel on other findings which in our opinion have ample support in the evidence. The court did not err in concluding therefrom that Paramount was not estopped from obtaining relief in this action.

Finally, appellant contends that there was such a delay by Paramount in bringing this action that it is barred by laches. Appellant's argument on this point proceeds on the assumption that Paramount delayed over twenty-five years in bringing the action after "The Covered Wagon" and other Paramount-Kodascope films had been openly sold and used without restrictions. Similarly, appellant asserts, Paramount delayed seventeen years in bringing the action

after the purchase of a 16 mm. print of "The Covered Wagon" by appellant, and thirteen years after appellant began commercial exhibition of it in Hollywood.

The judgment entered contains no award of damages for past unauthorized commercial use of the films in question. Only future use of the films is enjoined. Hence, Paramount's knowledge in years past, prior to asserting a specific claim against Hampton, is immaterial. This action is grounded upon the 1955 infringements alone, and was commenced less than nine months thereafter.

We conclude that the trial court did not err in holding that this action is not barred by laches.

Affirmed.