**Marshall HOUTS, Plaintiff,**

**v.**

**UNIVERSAL CITY STUDIOS, INC., a corporation; MCA, Inc., a corporation; National Broadcasting Company, Inc., a corporation; Glen Larson Productions, Inc., a Corporation; and Jack Klugman, Defendants.**

**No. CV 78–0281–RJK**

United States District Court, C.D. California.

Aug. 30, 1984.

Richards, Watson, Dreyfuss & Gershon, Harry L. Gershon, Michael Jenkins, Deborah S. Gershon, Los Angeles, Cal., for plaintiff.

Youngman, Hungate & Leopold, Joel McCabe Smith, Gary L. Swingle, Los Angeles, Cal., for defendants.

## MEMORANDUM OF DECISION AND ORDER

KELLEHER, Senior District Judge.

This is an action for damages and injunction based on copyright infringement. Plaintiff Marshall Houts, author of the book *Where Death Delights*, brings this suit against the writers, producers, distributors, and broadcasters of the television series *Quincy*. Defendants are Universal City Studios, MCA, National Broadcasting Company, Glen Larson Productions, and Jack Klugman. Plaintiff contends that defendants have infringed upon his copyright in the book in connection with the writing, production, distribution, and television broadcast of the series *Quincy*.

The Court presently has before it defendants' motion for summary judgment.

**28**

Defendants allege that as a matter of law plaintiff is estopped from claiming that *Where Death Delights* is partly or wholly fictional, since the book is held out to the public as nonfiction and factual.

██  The basic tenet of copyright law is that copyright protection is predicated upon originality. 17 U.S.C. § 102(a). No one, however, may claim originality as to facts. Facts may be discovered, but they are not created by an act of authorship. 1 *Nimmer on Copyright* § 2.11[A]. Consequently, the copyright protection afforded to fictional works differs from that afforded to factual works. In the case at bar, plaintiff claims that his book is an amalgam of fact and fiction, and hence it is entitled to full copyright protection. The general rule is that fictional elements, or fictionalized versions of factual elements, of an otherwise factual work are protectable under copyright law. 1 *Nimmer* at § 2.11[C]. Copyright estoppel is an exception to the general rule. Under the doctrine of copyright estoppel, once a plaintiff's work has been held out to the public as factual the author-plaintiff cannot then claim that the book is, in actuality, fiction and thus entitled to the higher protection allowed to fictional works. *See Oliver v. St. Germain Foundation,* 41 F.Supp. 296, 299 (S.D.Cal.1941).

In the case at bar, the plaintiff and publishers have made numerous statements and representations as to the book's factuality. These representations include:

(a) the book jacket of the American hardcover edition extols the books as *"real life* detective stories";

(b) the spine of the Dell paperback edition has the notation "N–F," expressly informing the public that the book is non-fiction; and

(c) the first page of the paperback edition proclaims that "[h]ere is a book that shows that truth can be more brutal than fiction."

The question then becomes whether these representations amount to holding the book out to the public as fact, thereby estopping plaintiff from asserting that it is partially fictional.

██  Case law has not established the standard for determining whether plaintiff held the book out as fact of fiction. Irrespective of the standard used, it is uncontested that plaintiff unambiguously held the book out as factual. Indeed, even plaintiff's literary experts concede that the book's style, tone, and structure bespeak that of a factual work. Furthermore, an analysis of *Marshall v. Yates,* CV 81–1850–MML (C.D.Cal.1983), a recent copyright estoppel case cited extensively by the parties with virtually identical facts, upholds the view that, irrespective of the standard used, literary critic or reasonable person, the plaintiff presented the book as factual.

*Marshall v. Yates,* involved the book *Shadowland* and the movie "Frances"—both of which relate to the life story of Frances Farmer, an actress and political activist prominent in the 1930's and 1940's. In *Marshall,* the plaintiffs alleged that portions of *Shadowland* were "fictionalized elements" which are protectable under the copyright laws even in largely biographical works. The court found, however, that plaintiffs were estopped from contending that portions of *Shadowland* were fictional, because *Shadowland* was presented to the public as nonfiction work.

In the case at bar, plaintiff argues that the holding and rationale of *Marshall* were decided after a full trial on the merits. Under Local Rule 7.14 and Fed.R.Civ.P. 56, when there is no triable issue of fact, the Court is required to decide the questions of law. Plaintiff does not claim that there is any dispute as to what the book jacket represents, or what the publishers represented to the public in releasing the book. Plaintiff does not contend that there is any other triable issue of fact relating to the representations made to the public. With the exception of the plaintiff's argument regarding the value to be given to certain evidentiary items, discussed below, the plaintiff disputes neither what was represented nor any other material fact. Thus, this matter is properly disposed of by sum-

mary judgment under Fed.R.Civ.P. 56 and Local Rule 7.14. Indeed, numerous courts, on motions for summary judgment, have estopped plaintiffs from claiming that a work was fiction after they held it out as fact. *See Oliver*, 41 F.Supp. 296; *Jason v. Fonda*, 526 F.Supp. 774 (C.D.Cal.1981). In opposition to defendants' motion for summary judgment, plaintiff also argues that the plaintiff must have "expressly held the book out as being completely factual" and that in this case, the plaintiff neither expressly holds it out nor holds it out as being *completely* factual. The first assertion is blatantly false. The book jacket expressly holds the book out as being true. If the statements "one of the most absorbing books on *true* crime ever published" and "truth can be more brutal than fiction" do not expressly hold the contents of the book out as true, then this Court is unaware of any situation in which an assertion could be deemed as being an express indication of a book's veracity.

Moreover, in *Marshall, Lake v. Columbia Broadcasting System*, 140 F.Supp. 707, 709 (S.D.Cal.1956), and *Huie v. National Broadcasting Company*, 184 F.Supp. 198, 199–200 (S.D.N.Y.1960), the courts found that expressions very similar to those here were statements "expressly" holding the work out to the public as fact. In *Marshall*, for example, *Shadowland*'s book jacket indicated that it is "the harrowing, controversial, *frighteningly* true story of what really happened to one of the world's most luminous young actresses." Without discussion, Judge Lucas concluded that *Shadowland* was expressly held out to the public as a factual work. This Court finds that *Where Death Delights* was expressly presented to the public as a factual work.

Plaintiff also claims that the book must not only be held out as factual, but also as *completely* factual, for estoppel to apply. *See* 1 *Nimmer* at § 2.11[C] ("[o]ne who represents his work to be completely factual may not in a subsequent infringement action prove that part of the work was fictional and therefore protectable"). Plaintiff contends that there is no indication that the book is entirely factual, and

that at best, the work is held out as being only partially factual and partially fictional. This argument is unpersuasive. As noted above, the statements on the book jacket hold the book out as being true. These statements imply that *the entire book, not a portion of it,* is true. Given these broad and inclusive representations, the reader is compelled to conclude that the *entire book* is true.

In *Marshall*, the court faced a similar situation. There, the author of the book made broad, all-inclusive statements about the truth of the story told therein. Again, without discussion, the court found that the book had been held out as being completely true. The Court finds that the broad, all-inclusive statements in *Where Death Delights* similarly hold the book out as being completely true.

This holding must necessarily be reached. If not, a plaintiff could make broad statements like those found here, clearly representing that the book is factual, and then avoid estoppel merely because the plaintiff had the foresight to not represent that each line, fact, detail, and chapter was factual and unembellished. Such a result would entirely incapacitate the estoppel doctrine. Therefore, this Court concludes that the language used in the book jacket herein holds the book out as being *completely* true.

Plaintiff further argues that because of the absurdity of some of the stories within *Where Death Delights*, any reader should have known that the stories were really fictionalized, irrespective of representations on the jacket cover about the book's factuality. The plaintiff then quotes from *Marshall* wherein Judge Lucas found that *Shadowland* was not so clearly incredible that "defendants should have been put on notice that portions of the book were fictionalized." *Marshall* at 9–10 n. 3.

■  Initially, this Court is not convinced that intrinsic evidence contained within the book is relevant to determine how the book was represented to the public. *Nimmer* indicates that only in the absence of an

express representation that the book is factual will the courts look to the representations implicit in the book. 1 *Nimmer* at § 2.11[C]. In this case, there were express representations that the book was factual. Thus, there is no need to reach the issue of what the implicit evidence represents to the public. In addition, in this case the plaintiff is arguing that the stories themselves represent to the public that the work is fiction merely by the fact that the stories are so ludicrous that no one would believe them to be fact. However, it is a non sequitur to argue that the stories hold themselves out as being fiction because the stories are not believable. Furthermore, Ninth Circuit courts have found that intrinsic evidence of a story's absurdity, evidence clearly more ludicrous to the average reader than the stories in *Where Death Delights*, would not overcome evidence that the plaintiff had expressly held the book out as factual in the introduction to the book. *See Oliver*, 41 F.Supp. 296. In *Oliver*, the plaintiff represented to the reader that his book, telling of experiences of an extraterrestrial, was not his words, but in fact had been told to him by the extraterrestrial. The court found by the author's assertions that the book was factual, he was estopped from claiming that the ludicrousness of the stories was intrinsic evidence that the book was held out as fiction. *Id.* at 299.

■ Moreover, any analysis of the intrinsic evidence would necessarily involve a determination of whether the stories are true or false. The cases hold, however, that the Court's inquiry is not whether the stories are true and believeable or false and absurd but whether the book was held out to the public as fact or fiction. *See Marshall*, CV 81–1850–MML (C.D.Cal. 1983); *Oliver*, 41 F.Supp. 296 (S.D.Cal. 1941); *Lake*, 140 F.Supp. 207 (S.D.Cal. 1956); *Huie*, 184 F.Supp. 198 (S.D.N.Y. 1960).

Even assuming intrinsic evidence is relevant, the Court has reviewed the story which the parties indicate is the most blatant example of this intrinsic absurdity which should have put the defendants on notice that the book was actually fiction. This Court finds that the Mike Malloy story is not so ludicrous as to make the "reader at least … doubt very seriously the factuality of these unauthenticated facts and incidents." This conclusion is supported by the defendants' written and oral representations, uncontroverted by plaintiff, that the Mike Malloy story is in fact a true story that was reported extensively in the *New York Times*. Moreover, plaintiff argues that since the book contains many examples of conversations and events that the author and Dr. Helpern could not possibly have been present to experience, the book is clearly fictional. This, however, is the very nature of biographical works that involve any historical perspective. All historical renditions would be deemed fictionalized under plaintiff's theory merely because the author was not there personally. In addition, other courts have estopped plaintiffs from claiming their works were fiction after holding them out as factual in cases involving historical works. *See, e.g., Marshall*, CV 81–1850–MML, and *Lake v. Columbia Broadcasting*, 140 F.Supp. at 709.

■ The importance, however, of the intrinsic evidence, according to plaintiff, is that it conflicts with the express representations made on the jacket cover. Plaintiff claims that this creates a triable issue of fact as to whether the plaintiff actually represented the book as factual. Contrary to plaintiff's assertions, the possibility that intrinsic evidence, if admissible, might lead a jury to conclude that the book was not held out as factual, does not create a triable issue of fact. The issue before the Court is whether, based on the *uncontroverted* representations, intrinsic or extrinsic, the plaintiff held the book out to the public as factual. It is undisputed that the Mike Malloy story is part of the book. Likewise, it is undisputed that the jacket represents that the book contains the true life stories of Dr. Helpern. Thus, by introducing evidence to indicate that the intrinsic evidence might lead to the conclusion

that the book was not held out as fact, the plaintiff has not created an issue of material fact; the plaintiff has merely added new elements to be considered in determining whether plaintiff held the book out as factual. There simply are no controverted facts. Moreover, this Court would deny summary judgment if the plaintiff were to show that whether the plaintiff held the book out to the public as factual is a question for the trier of fact. The *Oliver* case, barring the claim of the plaintiff therein for copyright infringement on an estoppel theory, was disposed of on summary judgment. Thus, this Court concludes that whether the book was held out to the public as factual is not a question of fact for the jury. The facts underlying a decision on that issue are not disputed and thus this Court can dispose of the matter summarily. *See Jason v. Fonda,* 526 F.Supp. 774.

Plaintiff spends a great deal of time arguing that the events in the book were, in actuality, fictional. The plaintiff argues that Dr. Helpern indicated before the book was published that the book was primarily nonfactual. Plaintiff also argues that book reviewers found that the book tended not to be factual. Opinions as to the actual factuality or fictitiousness of the book are irrelevant. As noted, the Court is not concerned with whether the stories in *Where Death Delights* are fact or fiction. The Court is only inquiring into how the book was held out to the public. Therefore, the author's perception of the book before publication is irrelevant, as are the book reviewer's comments. The single, dispositive determination is whether the book was presented to the public as factual.

Plaintiff also argues that the endorsement of the book by detective novel mavins is extrinsic evidence that the book was held out to the public as fiction and not fact, and thus there is a triable issue of fact as to how the book was held out. The Court finds that the book was expressly held out to the public as fact by the use of statements such as "these are true-life stories of Dr. Helpern" and "the book shows the truth can be more brutal than fiction." The fact that a fiction writer might also

have endorsed the book corresponds to the argument that an expert could have told that the stories in the book were fictionalized. The Court will not impose upon the public the obligation to discern every word, representation, and sentence to determine whether there is a representation that the book is fact or fiction. Given the express representation that the book is factual, the plaintiff will now be estopped from claiming it is not.

■ Lastly, plaintiff contends that in copyright estoppel, as in other forms of estoppel, reliance is part of the prima facie case. Plaintiff cites *Hampton v. Paramount Pictures,* 279 F.2d 100, 104 (9th Cir.1960), as authority for this proposition. In *Hampton,* Paramount and Krodascope contracted to give Krodascope the right to sell a 16mm. print from Paramount's movie for commercial exhibition. Paramount, by its inaction, subsequently abandoned its rights to release substandard-sized prints of the movie. The court found that Paramount was therefore estopped to enjoin the exhibition of the film by Hampton. *Hampton,* 279 F.2d at 102. *Hampton* is a typical, pure estoppel case whose subject matter happens to be copyright; it is not a copyright estoppel case. In form, on the estoppel point, *Hampton* is indistinguishable from a securities case. *See, e.g., Hecht v. Harris,* 430 F.2d 1202 (9th Cir.1970). The estoppel resulted from defendant's reliance on plaintiff's inaction. In the case at bar, however, as in *Marshall, Oliver,* and every other copyright estoppel case that has come to this Court's attention, the estoppel was created solely by plaintiff's affirmative action and representation that the work was factual. In neither *Marshall* nor *Oliver* is "detrimental reliance" an element of copyright estoppel. *See Marshall,* CV 81–185–MML; *Oliver,* 41 F.Supp. at 296.

Accordingly, the Court finds that there are no triable issues of material fact and defendants are entitled to summary judgment. An order will be entered estopping

plaintiff from claiming that *Where Death Delights* is a work of fiction.