**Jorge Antonio SANDOVAL, Plaintiff,**

v.

**NEW LINE CINEMA CORP., New Line Productions, Inc., and New Line Distribution, Inc., Defendants.**

**No. 96 Civ. 3145(SHS).**

United States District Court, S.D. New York.

Aug. 21, 1997.

L. Donald Prutzman, Stecher, Jaglom & Prutzman, New York City, for Plaintiff.

Stephen F. Huff, Pryos, Cashman, Sherman & Flynn, New York City, for Defendants.

*OPINION*

STEIN, District Judge.

Plaintiff Jorge Antonio Sandoval brought this action alleging that defendants infringed his copyrights in several photographs when they were shown in the background of a scene in the motion picture *Seven.* Defendants have moved for summary judgment dismissing the complaint pursuant to Fed. R.Civ.P. 56 and plaintiff has cross-moved for summary judgment in his favor. Defendants' motion is granted and plaintiff's motion is denied on the grounds that the display of the photographs constituted a fair use of them within the terms and intendment of the Copyright Act.

*Background*

Sandoval is the author of, and owns valid copyrights in, a series of ten photographs of himself which depict his body or face in a variety of unusual poses ("the Photographs"). Sandoval's Statement Pursuant to Local Rule 3(g) ("Sandoval Rule 3(g) Statement") ¶¶ 2–3. Sandoval created the Photographs between 1991 and 1994 "for his own artistic satisfaction" and has never publicly exhibited or commercially exploited them, nor does he have any current plans to do so. Compl. ¶ 9; Sandoval Rule 3(g) Statement ¶ 4.

Defendants are the producers and distributors of the motion picture *Seven,* a murder mystery which chronicles the pursuit by two detectives of a serial killer whose murders are each connected to one of the seven deadly sins. *Seven,* whose gross receipts totaled approximately $100 million,[1] has been variously described by critics as "a dark, grisly, horrifying and intelligent thriller, ... filmmaking of a high order"[2] and "the equivalent of a forced tour of a morgue."[3] In one of the film's scenes the detectives, after a hermeneutical discussion of Fourth Amendment ju-

---

**1.** Gregg Killday and Anne Thompson, "1995 Box Office Report," ENTERTAINMENT WEEKLY, February 2, 1996, at 27, *available in* 1996 WL 8793832.

**2.** Roger Ebert, "Two Against 'Seven': Pitt, Freeman Track Killer in Grisly, Intelligent Thriller,"

CHI. SUN-TIMES, Sept. 22, 1995, at 35, *available in* 1995 WL 6671917.

**3.** Kenneth Turan, " 'Seven' Offers a Punishing Look at Some Deadly Sins," L.A. TIMES, Sept. 22, 1995, at F–1, *available in* 1995 WL 9829377.

risprudence, agree that probable cause does not exist to justify seeking a warrant to enter and search the killer's apartment. They then immediately kick the apartment door down, suborn a witness to testify to probable cause, and enter. The apartment is filled with artifacts suggestive of the killer's mental derangement. Included in the background of the scene is a light box—turned on by one of the detectives—upon which hangs a series of black and white translucent forms, including certain of Sandoval's Photographs. New Line Cinema's Statement Pursuant to Local Rule 3(g) ¶ 5.

The scene in which the Photographs appear is approximately 1 ½ minutes in length. The light box which holds the Photographs is only visible in the background in approximately ten camera shots that range in duration from one to six seconds each, totaling at most thirty seconds. In the majority of those shots, the Photographs are obstructed by other objects in the scene—such as actors or furniture—and in no instance does the camera focus exclusively on the light box or the Photographs. Moreover, the light box images are out of focus for much of the time, since the camera is focused on the foreground. For these reasons, it is not surprising that plaintiff can state only that he and one or two unnamed acquaintances were able to identify the Photographs as his work, and only after careful scrutiny. Sandoval himself not only returned to the theater "at least twice," but also viewed enlarged still frames from the scene before he was able to conclude with certainty that ten of the images on the light box were the Photographs. Sandoval Aff. ¶¶ 7–13. The Court was only able to identify one of the Photographs as Sandoval's, and only after repeated viewings of the scene in connection with this motion for summary judgment.

After plaintiff concluded that the Photographs used were his, he commenced this action. The complaint alleges copyright infringement, intentional infliction of emotional distress, and invasion of privacy pursuant to both New York's Civil Rights Law § 51 and California common law.[4] Plaintiff seeks *inter alia* to enjoin the further distribution and display of the film and to collect actual and statutory damages pursuant to 17 U.S.C. § 504(c). Defendants concede for purposes of this motion that plaintiff's Photographs are in the subject scene, *see* Defs.' Mem. in Supp. of Defs.' Mot. for Summ. J., dated November 18, 1996 ("Defs.' Mem.") at 9, but contend principally that the fleeting and insignificant use of the Photographs constitutes fair use of the copyrighted works pursuant to section 107 of the Copyright Act.

*Discussion*

**I. The Standard for Summary Judgment**

Summary judgment will be granted "only when the moving party demonstrates that 'there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.'" *Allen v. Coughlin,* 64 F.3d 77, 79 (2d Cir.1995) (quoting Fed.R.Civ.P. 56(c)). In deciding whether a genuine dispute remains as to a material fact, the Court must resolve all ambiguities, and draw all reasonable inferences, against the moving party. *See Matsushita Electrical Industrial Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587–88, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986) (citing *U.S. v. Diebold, Inc.,* 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L.Ed.2d 176 (1962)).

In cases involving the defense of fair use to an allegation of copyright infringement, "[b]ecause the fair use question is so highly dependent on the particular facts of each case, courts ... have usually found it appropriate to allow the issue to proceed to trial." *Maxtone–Graham v. Burtchaell,* 803 F.2d 1253, 1258 (2d Cir.1986), *cert. denied,* 481 U.S. 1059, 107 S.Ct. 2201, 95 L.Ed.2d 856 (1987). However, several cases in this circuit have demonstrated that courts may resolve fair use determinations at the summary judgment stage, where no material issues of fact remain to be tried. *See, e.g., id.* at 1265; *Robinson v. Random House, Inc.,* 877 F.Supp. 830, 843 (S.D.N.Y.1995); *Amsinck v.*

---

4. Sandoval subsequently withdrew his privacy and emotional distress claims. *See* Pl.'s Mem. Opp.'n to Defs.' Mot. for Summ. J. and in Supp. of Pl.'s Cross–Mot. for Partial Summ. J., dated December 9, 1996 ("Pl.'s Mem.") at 2 n. 3; Pl.'s Reply Mem. in Supp. of Cross–Mot. for Partial Summ. J., dated January 3, 1997 at 1. Accordingly, only the copyright claim survives.

*Columbia Pictures Industries, Inc.*, 862 F.Supp. 1044, 1050 (S.D.N.Y.1994).

## II. Copyright Infringement

 To establish a claim of copyright infringement, the plaintiff must establish (1) ownership of a valid copyright and (2) unauthorized copying or a violation of one of the other exclusive rights afforded copyright owners pursuant to the Copyright Act. *See Twin Peaks Productions v. Publications Int'l. Ltd.*, 996 F.2d 1366, 1372 (2d Cir.1993). Among these rights are the rights to reproduce and display publicly the copyrighted work. *See* 29 U.S.C. §§ 106(1), (5) (1996).

In this case, defendants do not contest the validity of plaintiff's copyrights in the Photographs at issue. *See* Defs.' Mem. at 9. Moreover, defendants concede, for purposes of its summary judgment motion only, that plaintiff's copyrighted work is in the subject scene. *See id.* However, defendants argue that the light box images do not constitute "legally cognizable copies" because they are: (1) severely out of focus; (2) obscured by the scene's action and set dressing; and (3) substantially reduced in size. Similarly, defendants contend that their use of the Photographs cannot constitute a "public display" of plaintiff's Photographs because they are not recognizable to the public. Plaintiff counters that defendants did, in fact, make transparencies, or copies, of the Photographs, and that defendants also violated plaintiff's copyrights by "displaying" his copyrighted works by means of film.

For the reasons set forth below, plaintiff's copyrights have not been infringed because defendants' use of the Photographs was a fair use. Because this finding of fair use negates any liability stemming from defendants' use of the Photographs, this Court need not decide whether plaintiff has established the two elements of a copyright infringement claim.

## III. Fair Use

 17 U.S.C. § 107 provides that "the fair use of a copyrighted work ... is not an infringement of copyright." "This doctrine recognizes that there are circumstances in which the Copyright Act's goals of encouraging creative and original work is better served by allowing a use of a copyrighted work than prohibiting its use." *Robinson*, 877 F.Supp. at 839 (citing *Arica Institute, Inc. v. Palmer*, 970 F.2d 1067, 1077 (2d Cir.1992)). Section 107 goes on to provide that "[i]n determining whether the use made of a work in any particular case is a fair use the factors to be considered shall include (1) the purpose and character of the use ... (2) the nature of the copyrighted work, (3) the amount and substantiality of the portion used in relation to the copyrighted work as a whole, and (4) the effect of the use on the potential market for or value of the copyrighted work." The inquiry requires a case-by-case analysis and the four factors are to be "weighed together in light of the purposes of copyright." *Campbell v. Acuff–Rose Music, Inc.*, 510 U.S. 569, 578, 114 S.Ct. 1164, 1171, 127 L.Ed.2d 500 (1994) (citations omitted).

 Importantly, the factors enumerated in Section 107 are nonexclusive, and unenumerated factors may have bearing on the fair use determination. *See American Geophysical Union v. Texaco, Inc.*, 60 F.3d 913, 931 (2d Cir.1994); 4 MELVILLE B. NIMMER & DAVID NIMMER, NIMMER ON COPYRIGHT § 13.05[A], at 13–155 to 156 (1997). The defendant bears the burden of proof with respect to all issues in dispute concerning whether a particular use of a copyrighted work is a "fair use" for purposes of 17 U.S.C. § 107. *See American Geophysical Union*, 60 F.3d at 918.

### A. The Purpose and Character of the Use

 The first factor listed in section 107 is "the purpose and character of the use, including whether such use is of a commercial nature or is for nonprofit educational purposes." Uses of a copyrighted work for purposes such as "criticism, comment, news reporting, teaching ..., scholarship, or research," are more likely to be found to be fair uses than uses for commercial purposes. *See id.; Twin Peaks Productions v. Publications Int'l. Ltd.*, 996 F.2d 1366, 1374–75 (2d Cir.1993). However, the Second Circuit has recently explained that courts should be wary of placing too much emphasis on wheth-

er or not a given use is commercial in nature, "[s]ince many, if not most, secondary users seek at least some measure of commercial gain from their use." *American Geophysical Union,* 60 F.3d at 921. A second consideration under this factor is whether the secondary use might be said to be a "transformative use" in the sense that it "adds something new, with a further purpose or different character" than the copyrighted work. *Id.* at 922–23 (citing *Campbell,* 510 U.S. at 579, 114 S.Ct. at 1171).

In this case, defendants surely produced and distributed the film *Seven* with a commercial purpose. However, it is also true that defendants do much more than "merely supersede the [copyrighted work]" by exhibiting them, however obscurely, for the first time in the film. *See Campbell,* 510 U.S. at 579, 114 S.Ct. at 1171. The use of plaintiff's Photographs was transformative, in the sense that defendants used the visual images created in plaintiff's work in furtherance of the creation of a distinct visual aesthetic and overall mood for the moviegoer watching the scene in the killer's apartment. Defendants did not use the Photographs to promote *Seven,* nor is there any indication that defendants were trying to exploit directly the theoretical market for Sandoval's previously unexhibited photography. *See Ringgold v. Black Entertainment Television, Inc.,* 1996 WL 535547, at 3. This case is thus unlike *Woods v. Universal City Studios, Inc.,* 920 F.Supp. 62 (S.D.N.Y.1996), which is unavailingly relied upon by plaintiff. In that case, the court found that the movie set created by the defendant film studio was essentially a recreation of plaintiff's copyrighted drawing. *Id.* at 64–65.

While the commercial purpose of *Seven* weighs in favor of plaintiff on this first factor, the transformative nature of the use of the Photographs means that factor one will not weigh heavily in the overall fair use analysis. *See Campbell,* 510 U.S. at 579, 114 S.Ct. at 1171 ("the more transformative the new work, the less will be the significance of other factors, like commercialism, that may weigh against a finding of fair use").

### B. Nature of the Copyrighted Work

■ There is no dispute that Sandoval's Photographs are creative and original works of art. Thus, this factor favors plaintiff. This finding is buttressed by the fact that Sandoval has yet to exhibit publicly his Photographs, since the unpublished nature of a copyrighted work weighs against a finding of fair use under this factor. *See Harper & Row, Publishers, Inc. v. Nation Enterprises,* 471 U.S. 539, 563, 105 S.Ct. 2218, 2232, 85 L.Ed.2d 588 (1985).

### C. Amount and Substantiality of the Portion Used

■ The third factor listed in section 107 is "the amount and substantiality of the portion used in relation to the copyrighted work as a whole." The Court must take into account the quantity and value of the material used in relation to the work as a whole. *See Campbell,* 510 U.S. at 586–87, 114 S.Ct. at 1175.

Though defendant included in the scene's background plaintiff's ten copyrighted works in their entirety, at most a single one of the Photographs is recognizable as Sandoval's work, and that only after careful scrutiny and repeated viewings. For the vast majority of the thirty seconds in which the light box appears, the Photographs are not discernible to even an individual viewing the scene with an eye toward identifying the copyrighted works; they are even less identifiable to the average viewer concentrating on the foreground action. This fleeting and obscured use of plaintiff's work did not and cannot capture the essence or value of the plaintiff's work. *See Ringgold, supra,* 1996 WL 535547 at 4 (holding that obstructed, unfocused view of copyrighted poster in television episode for a total of less than twenty-seven seconds was insubstantial, and that factor favored finding of fair use); *Amsinck,* 862 F.Supp. at 1050 (finding that defendant's display of copyrighted mobile in its entirety in defendant's film for periods of a few seconds and over a total of ninety-six seconds—at some points in close-ups—did not preclude a finding of fair use); *Mura v. Columbia Broadcasting System, Inc.,* 245 F.Supp. 587, 590 (S.D.N.Y.1965) (use of copyrighted puppets

for approximately thirty-five seconds in children's television program was fair use, in part, because the puppets were not a principal attraction but were used in an "incidental" manner).

Although the use of the Photographs in their entirety leads the Court to find that this fair use factor favors plaintiff, the Court declines to hold that the obscured and fleeting nature of the use precludes a finding of fair use. *See Amsinck*, 862 F.Supp. at 1050.

## D. The Effect upon the Potential Market for the Copyrighted Work

 The fourth factor listed in section 107 instructs the court to examine the effect that the infringing work will have on the market for the original work. 17 U.S.C. § 107(4). This factor is arguably the most important of the four enumerated factors of the fair use analysis. *See Harper & Row*, 471 U.S. at 566, 105 S.Ct. at 2233 (this factor is "undoubtedly the single most important element of fair use"); *accord* 4 NIMMER ON COPYRIGHT § 13.05[A][4], 13–186 to 187 ("this [factor] emerges as the most important, and indeed, central fair use factor"); *but see American Geophysical Union*, 37 F.3d at 889 (noting that the Supreme Court's discussion of the fourth factor in its most recent fair use decision, *Campbell v. Acuff–Rose Music, Inc.*, 510 U.S. 569, 114 S.Ct. 1164, 127 L.Ed.2d 500 (1994), omits that this factor is the most important element). This factor requires courts to consider not only the extent of market harm caused by the specific use in question, but the effect that would occur if that type of use became widespread. *See Harper & Row*, 471 U.S. at 568, 105 S.Ct. at 2234.

Here, the defendant's fleeting and obscured use of the Photographs as part of the background to a movie scene cannot be considered a substitute for the Photographs by any stretch of the imagination. Sandoval's work is virtually undetectable in the scene at issue. Thus, the value of and market potential for his work is in no way usurped, since the public is not even aware after viewing *Seven* that they have had a glimpse of Sandoval's work. Even widespread uses of Sandoval's Photographs in such a fleeting, ob-

scured, and out-of-focus manner could not begin to encroach on the potential market for his work. In short, this important factor weighs decidedly in defendants' favor.

### Conclusion

After weighing the above factors, the Court concludes that the use defendants have made of the Photographs is a "fair use" of them pursuant to 17 U.S.C. § 107. The fleeting, obscured, and virtually undetectable use of Sandoval's Photographs in *Seven* for at most thirty seconds could not have adversely effected the potential market for Sandoval's work. As a matter of law, this finding is not outweighed by those fair use factors which favor plaintiff. *See Wright v. Warner Books, Inc.*, 953 F.2d 731, 740 (2d Cir.1991).

For the reasons set forth above, defendants' motion for summary judgment is granted and plaintiff's cross-motion for summary judgment is denied.

SO ORDERED: