**PARAMOUNT PICTURES CORPORATION,**
Plaintiff,

v.

**CAROL PUBLISHING GROUP,**
**et al., Defendants.**

**No. 97–CV–8500 (SAS) SC.**

United States District Court,
S.D. New York.

June 1, 1998.

Jonathan Zavin, Richards & O'Neil, LLP, New York, NY, for Plaintiff.

John R. Sachs, Jr., Ohrenstein & Brown, New York, NY, for defendant Carol Pub. Group.

Leon Friedman, New York, NY, for Defendant Sam Ramer.

### ORDER RE: PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION

CONTI, District Judge.

### I. INTRODUCTION

This is an action for copyright infringement brought by plaintiff Paramount Pictures Corporation ("Paramount") which owns copyrights in the Star Trek television series and movies. Paramount contends that a book entitled *The Joy of Trek*, written by defendant Sam Ramer ("Ramer") and pub-

lished by defendant Carol Publishing Group ("Carol Publishing"), infringes a number of its Star Trek related copyrights. Paramount filed a motion for a preliminary injunction, seeking to enjoin the publication and distribution of *The Joy of Trek*. Having conducted a hearing on this issue, the Court makes the following findings of fact and conclusions of law.

### II. BACKGROUND

The original Star Trek series (the "Original Series") made its network television debut in 1966. This unique science fiction television program chronicled the adventures of the U.S.S. Enterprise and its crew as they traveled through space during the 23rd century. Many of its characters, such as Captain Kirk and Mr. Spock, have become household names. The Original Series was broadcast nationwide through 1969, and since that time episodes of the Original Series have been rerun in syndication. In addition to the Original Series there have been eight Star Trek Motion Pictures, as well three further Star Trek television series: Star Trek: The Next Generation; Star Trek: Deep Space Nine; and, Star Trek: Voyager. Collectively, the Court will refer to these works as the Star Trek Properties.

The Star Trek Properties created a subcultural phenomenon, fostering a number of intensely loyal fans. The fervency of these fans apparently influenced[1] NBC to reverse its decision to cancel the Original Series after its first season. The more devoted of these fans are known as "Trekkers." Ramer, the author of *The Joy of Trek*, is a self confessed Trekker.

The popularity of the Star Trek Properties has given rise to a cottage industry of products, both licensed and unlicensed, that are in some way related to Star Trek. These products range from toys and clothing to books which detail every conceivable aspect of the Star Trek Properties. Although Paramount has spent considerable time and money enforcing its rights in the intellectual property related to Star Trek, it has not instigated legal proceedings against every entity that

---

1. Undoubtedly the favorable demographic char-     acteristic of these fans didn't hurt their cause.

has potentially run afoul of those rights. Paramount estimates that, since 1994, it has brought over one hundred actions related to the Star Trek Properties and spent one million dollars per year to enforce these intellectual property rights.

In creating *The Joy of Trek*, Ramer and Carol publishing (collectively "Defendants") sought to create a book that would explain the Star Trek phenomenon to the non-Trekker, particularly someone who finds him or herself involved in a relationship with a Trekker. The book's complete title is, *The Joy of Trek: How to Enhance Your Relations with a STAR TREK Fan*. The book's back cover explains that it contains, "everything a Star Trek novice needs to know to keep up with a diehard Trekker." The 217–page book contains three distinct sections. The first section, the Preface and Chapters One and Two, contains an explanation of the popularity of Star Trek and a brief description of the typical Trekker. The next section, (the "Middle Portion"), pages 33 through 190, is a guide to the Star Trek Properties which contains: brief synopses of the major plots and story lines of many of the Star Trek Properties; descriptions of the history and personalities of the major Star Trek characters; and, descriptions of the fictional alien species and fictional technologies that appear in the Star Trek Properties. The final portion of the book consists of a variety of information, including ways to relate to Trekkers and a personal recollection of Ramer's experiences at Star Trek conventions [2].

*The Joy of Trek* was published in November of 1997. Paramount became aware of the publication on or about December 17, 1997. On January of 15, 1997, Paramount advised Carol publishing by letter of counsel that it believed *The Joy of Trek* infringed on its rights in the Star Trek Properties, and demanded the Carol Publishing cease publication. On February 10, 1998, after being informed that Carol Publishing refused to discontinue publishing the book, Paramount made this application for a preliminarily injunction barring the publication, distribution and sale of *The Joy of Trek*.

## III. DISCUSSION

In order to succeed on a motion for a preliminary injunction, a party must show (a) irreparable harm should the injunction not be granted, and (b) either (i) a likelihood of success on the merits or (ii) sufficient serious question going to the merits and a balance of hardships tipping decidedly in the movant's favor. *ABKCO Music, Inc. v. Stellar Records, Inc.*, 96 F.3d 60, 64 (2d Cir. 1996). Because a prima facie case of copyright infringement creates a presumption of irreparable harm, the Court begins its analysis with the likelihood of success on the merits.

### A. Likelihood of Success on the Merits

#### 1. Infringement

To succeed on its claim for copyright infringement, Paramount must demonstrate two elements: "(1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original." *Feist Publications, Inc. v. Rural Telephone Serv., Inc.*, 499 U.S. 340, 361, 111 S.Ct. 1282, 113 L.Ed.2d 358 (1991). In the instant case, Paramount has produced copies of copyright certificates which constitute prima facie evidence of ownership of a valid copyright. *See* 17 U.S.C. § 410(c). Defendants do not dispute that Paramount owns valid copyrights in the Star Trek television shows and movies. The sole issue, therefore, is whether *The Joy of Trek* copies these works [3].

A plaintiff may establish copying either by direct evidence or by showing that the defendant had access to the plaintiff's work and the two works are substantially similar. *Twin Peaks Productions, Inc. v. Publications International, Ltd.*, 996 F.2d 1366, 1372 (2d Cir.1993). As an initial matter, it would be absurd to suggest that Ramer has not copied from the Star Trek Proper-

---

**2.** These conventions are gatherings of Star Trek devotees at which Star Trek is discussed, sometimes by actual cast members, and various Star Treks products are displayed.

**3.** Paramount's complaint claims that *The Joy of Trek* infringes on 222 Star Trek television episodes and 8 Star Trek movies.

ties.[4] His book contains quotations taken directly from these works, and the Middle Portion is devoted to telling a large portion of the Star Trek story. *See Castle Rock Entertainment v. Carol Publishing Group, Inc.*, 955 F.Supp. 260, 264 (S.D.N.Y.1997). Indeed, the book's back cover explains that it contains "everything a Star Trek novice needs to know to keep up with a diehard Trekker [including] a concise history of the series and the movies." The fact that the Joy of Trek copies from the Star Trek Properties as a factual matter is not dispositive. "Not all copying ... is copyright infringement ... only the copying of the original elements of a protected work." *Id.* (citing *Feist*, 499 U.S. at 345, 111 S.Ct. 1282) (internal quotations omitted). The Court must therefore decide whether the copying is actionable.

The Court finds that *The Joy of Trek* consists of actionable copying because it is substantially similar to the Star Trek Properties[5]. The test for substantial similarity is "whether an average lay observer would recognize the alleged copy as having been appropriated from the copyrighted work." *Knitwaves, Inc. v. Lollytogs Ltd.*, 71 F.3d 996, 1001 (2d Cir.1995) (internal quotations omitted). There can be no question that *The Joy of Trek* meets that test. The characters, devices and plot lines discussed in the book have been taken directly from the Star Trek Properties. A reasonable person would easily recognize these aspects of the book as having been appropriated from the copyrighted properties. By relating synopses of individual episodes and encapsulations of the various characters and alien species, the work copies "the heart" of the Star Trek properties. *See Castle Rock*, 955 F.Supp. at 269.

Defendants attempt to explain this problem away by claiming that the book is simply the author's "descriptions" of that which he saw while watching Star Trek. An argument similar to Defendants' was raised in the *Cas-*

*tle Rock* case. In *Castle Rock*, defendants had authored and published a quiz book called The Seinfeld Aptitude Test, or SAT. *Id.* at 261. This book contained trivia questions based on Seinfeld, the celebrated television show about nothing. *Id.* Defendants sought to argue that the show discussed "uncopyrightable facts about the Seinfeld show." *Id.* at 266. The Court disagreed stating, "Seinfeld is fiction; both the 'facts' in the various Seinfeld episodes, and the expression of those facts, are plaintiff's creations ... In other words by copying 'facts' that plaintiff invented, SAT appropriates plaintiffs original contribution." *Id.* (internal quotations and citations omitted). Similarly, in the instant case, the passages which Defendants claim to be "descriptions" are nothing more than a recapitulation of the fictitious history of Star Trek. This fictitious history is a story, created and owned by Paramount. The characters, plots and dramatic episodes that comprise this story are its original elements. By reproducing these elements *The Joy of Trek* infringes on the Star Trek Properties as a matter of law.

The manner of infringement is most aptly characterized as fragmented literal similarity. The Second Circuit has endorsed two distinct types of copying that it considers to be substantially similar, fragmented literal similarity and comprehensive nonliteral similarity. *Ringgold*, 126 F.3d at 75 n. 3. Fragmented similarity refers to exact copying of a portion of a work. *Id.* *The Joy of Trek* satisfies this form of substantial similarity by combining two factors. First, it lifts dialogue directly from the Star Trek Properties. *The Joy of Trek* contains a number of quotes, such as "live long and prosper" and "make it so" that are used in the Star Trek properties. Secondly, as discussed *supra*, *The Joy of Trek* copies the fictitious facts that comprise "the heart" of the Star Trek Properties. Because the fictitious history is presented in a different order then that in which it appeared in the Star Trek Properties, the similarity is

4. Ramer admits to having watched each of the allegedly infringed properties at least once.

5. This discussion of substantially similarity concerns whether "the degree of similarity suffices to demonstrate actionable infringement," as op-

posed to what has come to be known as probative similarity which goes to proof of copying. *Ringgold v. Black Entertainment Television, Inc.*, 126 F.3d 70, 74 (2d. Cir.1997).

fragmented. Nevertheless, the verbatim recitations of quotes from the Star Trek Properties along with the retelling of its essential elements constitutes fragmented literal similarity.

A finding of substantial similarity is consistent with the Second Circuit's decision in *Twin Peaks*. In *Twin Peaks* the court found that a guidebook which contained, among other things, detailed plot summaries of the eight then existing episodes of the once popular television series Twin Peaks, infringed on the copyrighted television shows. 996 F.2d at 1372, 1373. *Twin Peaks*, however, is not directly on point because the descriptions of the episodes in that case were far more extensive than the excerpts in *The Joy of Trek* which vary in length from a few paragraphs to a few lines, and therefore the Court found the guidebook satisfied substantial similarity through comprehensive nonliteral similarity. *See Id.* at 1372. Thus, although the narrow finding of this Court is not identical to the holding in *Twin Peaks*, both works satisfy the broader test articulated in *Knitwaves* because, "the average lay observer would recognize the alleged copy as having been appropriated from the copyrighted work." *Knitwaves*, 71 F.3d at 1001. Moreover, a distilled holding of *Twin Peaks* is that a book which tells the story of a copyrighted television series infringes on its copyright[6]. *The Joy of Trek* is clearly such a book.

Defendants also contend that the book cannot be considered substantially similar to the Star Trek Properties because they comprise over 14,000 pages of script[7] while the portion of the book which allegedly copies these works totals only 160 pages. Copying only small portions of a series of copyrighted works offers no protection for a defendant. "We recognize, of course, that a copyright infringement may occur by reason of a substantial similarity that involves only a small portion of each work." *Burroughs v. Metro–Goldwyn–Mayer, Inc.*, 683 F.2d 610 (2d Cir. 1982). *See also Craft v. Kobler*, 667 F.Supp. 120 (S.D.N.Y.1987) (issuing a preliminary injunction that prevented the publication of a book which copied 3,500 words out of 14 volumes of copyrighted writing.)

### 2. Fair Use

■ Defendants contend that even if *The Joy of Trek* copies the Star Trek Properties, it is protected by the "fair use" doctrine. The Copyright Act provides that: the fair use of a copyrighted work ... for purposes such as criticism, comment, news reporting teaching ... scholarship, or research, is not an infringement of copyright. 17 U.S.C. § 107. In determining whether a defendant's use of a copyrighted work is fair use, the factors to be considered are: (1) the purpose and character of the defendant's use, including whether such use is of a commercial nature; (2) the nature of the copyrighted work; (3) the amount and substantiality of the portion used in relation to the copyrighted work as a whole; and, (4) the effect of the use upon the potential market for or value of the copyrighted work. *Id.*

### a. The purpose and character of the work

There are two separate inquiries to be conducted under the first part of the fair use inquiry. The first is whether the work is primarily commercial in nature or whether aspires to serve broad public purposes. *Twin Peaks*, 996 F.2d at 1366. In the instant case, it the book falls somewhere in between these two areas. While *The Joy of Trek*'s publishers undoubtedly hope to realize a profit, this fact is not dispositive as many traditional educational publishers, whose products are often deemed to be fair use, are profit motivated. *See Campbell v. Acuff–Rose Music, Inc.*, 510 U.S. 569, 584,

---

6. *Twin Peaks* also held that the book violated the plaintiff's right to make a derivative work pursuant to 17 U.S.C. § 106(2). In light of the Court's finding on infringement, such a determination is superfluous. *See Twin Peaks*, 996 F.2d at 1372 (citing 2 Melville B. Nimmer & David Nimmer, *Nimmer on Copyright*, § 8.09[a] at 8–114 (1992) (hereafter *"Nimmer"*)).

7. The scripts themselves are not copyrighted, however, Defendants have used the number of pages to illustrate the amount of material in the copyrighted works.

114 S.Ct. 1164, 127 L.Ed.2d 500 (1994); *See also Nimmer* at 13.05[A][1][a]. The Court finds that Mr. Ramer was motivated, to a large extent, by a genuine desire to help others to understand the idiosyncracies of the typical Trekker. This ulterior motive serves as a counter balance to the profit motive also demonstrated at trial. The Court's determination is guided by the Second Circuit's admonition that courts should not discount the value of works which concern topics of mass appeal. *See Twin Peaks* 996 F.2d at 1374. While a commentary on Star Trek does not fall within the traditional elitist notion of an educational work, the Court is "alert to the risk of permitting subjective judgments about quality to tilt the scales [of fair use]." *Id.*

■ The balance of this first factor, then, turns on the second part of the first fair use factor, whether the work can be considered to be transformative. A work is transformative when it adds something new to another work with "a further purpose or different character, altering the first with new expression, meaning or message." *Campbell*, 510 U.S. at 579, 114 S.Ct. 1164. The Court finds that *The Joy of Trek* does not meet this requirement. The Middle Portion simply retells the story of Star Trek in a condensed version, albeit in a different order. Chapter 3, entitled, "The Story So Far; or, 'How Did Scotty Get So Old and Fat?'" merely encapsulates the story of Star Trek. Chapters 4–7 recount the history and personalities of the characters in the four different Star Trek television series, while Chapter 9 does the same for the fictitious alien species. Although the structure of the book differs from the dramatic linear format of the Star Trek Properties, these chapters do not add anything substantial that is new to the Star Trek story.

Defendants point out that, interspersed within this summary, are a number of allegedly humorous comments about the series. For example, on page 36 the book describes the transition from the first to the second mission of the Starship Enterprise, noting that "... the crew received new uniforms that looked like pajamas but were not as stylish." This quip, however, appears after nearly two pages summarizing the events of Captain Kirk's years in command of the Starship Enterprise. Asides such as these do not sufficiently transform a summary that the book's own cover admits is "everything a Star Trek novice needs to know."

■ Similarly, the fact that the Middle portion is wedged between two non-infringing sections of the book does not lead to a finding of fair use. It simply cannot be the case that an illicit copying can be protected by being placed in the midst of segments that do not infringe. As Judge Learned Hand wrote, "no plagiarist can excuse the wrong by showing how much of his work he did not pirate." *Sheldon v. Metro–Goldwyn Pictures Corp.*, 81 F.2d 49, 56 (2d Cir.1936) *aff'd*, 309 U.S. 390, 60 S.Ct. 681, 84 L.Ed. 825 (1940).

The *Twin Peaks* decision informs this analysis. In *Twin Peaks*, the book at issue was comprised of seven chapters. 966 F.2d at 1370. The topic of four of those chapters were: (1) the popularity of the show; (2) the creator of the show; (3) the producer of the show; and (4) the music of the show. *Id.* at 1370. Although the Court has not reviewed the book itself, these subjects do not appear to be potentially infringing because they are devoted to facts in the real world as opposed to the fictitious facts created in the television program. Yet despite the existence of these noninfringing chapters, the chapters that were not transformative prevented a finding of fair use. *id.* at 1376.

Defendants have also attempted to shoehorn *The Joy of Trek* into the category of parody, one of the legally recognized types of transformative works. The Court determines that the shoe does not fit. "Parody needs to mimic an original to make its point ..." *Campbell*, 510 U.S. at 580, 581, 114 S.Ct. 1164. While the *Joy of Trek* does poke fun at Star Trek and its fans, the book's overall purpose is quite the opposite. A parody is devoted to making fun of its subject. The point of this book is to provide the beginner with everything he or she needs to know about Star Trek. Although the Middle Portion does contain some comedic asides,

they are insufficient to transform this summary into a parody [8]. Moreover, it would be nonsensical to think that a Trekker would author a book in which the main point is to mock Star Trek. Although *The Joy of Trek* demonstrates that Mr. Ramer takes neither himself nor his hobby too seriously, the overall tone of the book, particularly the Middle Portion, is not that of parody.

### b. Nature of the copyrighted work

The resolution of this second factor is straight forward. The Star Trek Properties are creative works of fiction and are therefore entitled to the highest level of protection. *Twin Peaks,* 996 F.2d at 1376.

### c. Amount and substantiality of the portion used in relation to the copyrighted work as a whole.

██ "The fact that a book is substantially similar to a television program so as to be prima facie infringing suffices for a determination that the third fair use factor favors the plaintiff ..." *Id.* at 1377. Defendants contend that the large amount of copying is necessary to accomplish the book's purpose of explaining the appeal of Star Trek to its fans. This argument is both factually and legally inaccurate. As discussed *supra,* the majority of this book is devoted to recounting the story of Star Trek. It is difficult to see how 168 pages can be devoted to illustration while the true purposes of the book is carried out by the book's remaining 49 pages. Moreover, allowing such a large portion of the story to be attributed to background for the purposes of commentary would allow the "fair use" exception to swallow the rule. This book explains, not simply the appeal of Star Trek, but the story of Star Trek. For that reason, the third factor favors Paramount.

### d. The effect of the defendant's use upon the potential market for or value of the copyrighted work.

One function of the fourth element of the fair use inquiry is to determine whether the copyright holder will be harmed because the infringing book acts as a market substitute for either the original or a derivative work. *Campbell,* 510 U.S. at 590, 114 S.Ct. 1164. While the book cannot serve as a market substitute for the richly entertaining television shows and movies, it can interfere with Paramount's market for derivative works. Paramount licenses a number of guide books that appear to be derivative works, such as *The Star Trek Encyclopedia* and *Star Trek Chronology—The History of the Future. The Joy of Trek* itself proclaims that, "[t]his book provides you with more than enough information ... [y]ou do not need to consult encyclopedias or compendiums." This statement speaks for itself.

██ Defendants claim that their book differs from any work presently licensed by Paramount. This makes no difference. A person interested in learning about the fictional history of Star Trek now must purchase a product licensed by Paramount [9]. This book serves as a potential substitute. Citing the adage, "don't listen to what we say, watch what we do," Defendants also argue that Plaintiff's lack of legal action against other allegedly infringing indicates that *The Joy of Trek* will not damage a potential market. This argument is without merit. It is possible that Paramount believed that the other books did not infringe on the Star Trek Properties. It is also possible that Paramount simply has had a change in corporate policy, determining that the market is now ripe for this type of derivative product. Regardless, the lack of earlier litigation against other similar works is simply irrelevant. A self-avowed substitute for other Paramount licensed products adversely impacts the market for derivative works.

---

8. While Defendants have suggested a number of other comedic works in which Star Trek is parodied, including takeoffs on Dr. McCoy's famous expression, "Dammit Jim, I'm a doctor not a ..." or Mr. Scott's desperate statement, "I can't do it captain. I don't have enough power!" Mr. Ramer's book, however, does not so qualify.

9. It is, of course, possible that other infringing books exist that could serve the same purpose. Whether or not this is the case is irrelevant to this Court's determination. *See* Part III[A][3] *infra.*

Because all four factors for determining "fair use" favor Paramount, the Court determines that *The Joy of Trek* is not a fair use of the Star Trek Properties.

### 3. Affirmative Defenses

■■■■ Defendants raise two affirmative defenses, abandonment and estoppel. To establish abandonment, an infringer must demonstrate: (1) an intent by the copyright holder to surrender rights in its work; and (2) an overt act evidencing that intent. *National Comics Publication, Inc. v. Fawcett Publications*, 191 F.2d 594, 598 (2d Cir.1951); *Schatt v. Curtis Management Group, Inc.*, 764 F.Supp. 902, 907 (S.D.N.Y.1991). Neither of these elements are present in this case. Paramount has expended substantial resources in enforcing its copyrights in the Star Trek Properties. In addition, the presence of a copyright notice, as exists in each of the Star Trek Properties, has been held to be evidence of an intent not to abandon one's copyrights. *See Marvin Worth Prods. v. Superior Films Corp.*, 319 F.Supp. 1269, 1273 (S.D.N.Y.1970).

■■■■ Recognizing the deficiencies in a traditional abandonment defense, Defendants invite the Court to boldly go where no court has gone before and recognize the doctrine of limited abandonment. The Court declines the invitation. The Court agrees with *Metro–Goldwyn–Mayer, Inc. v. Showcase Atlanta Cooperative Productions, Inc.*, where the court stated "[n]o pertinent authority has been cited for the proposition [of limited abandonment] and the Court knows of none. Further, the evidence before the Court falls far short of that required to show that Plaintiffs have abandoned their copyrights. Even if the other [allegedly infringing works] cited by defendants are not [fair use], the fact that an occasional infringement slips through a copyright holder's surveillance net is insufficient to establish the intent required to find abandonment." 217 U.S.P.Q. 857, 858

(N.D.Ga.1981). Accordingly, Defendants' abandonment defense is ineffectual.

■■■■ Defendants raise a similarly unique argument regarding estoppel. Because Paramount contacted Carroll only a short time after becoming aware of *The Joy of Trek*, the traditional estoppel defense [10] is unavailable to Defendants. Defendants instead allege that Paramount's failure to commence litigation against *other* potentially infringing books estops them from bringing this action. Extending the doctrine of estoppel so that a defendant may rely on a plaintiff's conduct toward another party is both unsupported by law and pernicious as a matter of policy.

"The mere fact that Defendants heard from third parties that no one had complained about their arguable infringing productions does not in any way estop Plaintiffs from enforcing their rights against Defendants." *Showcase Atlanta*, 217 U.S.P.Q. at 859. Allowing such a defense would compel courts to examine all the other allegedly infringing works on which defendant's reliance was based in order to ascertain whether these works were in fact infringing, thereby creating a number of smaller infringement hearings within a single copyright action. Moreover, there is no legal duty to instigate legal proceedings. Perhaps it is the case, as Defendants intimated, that Paramount has chosen to eschew litigation with larger publishing houses, and instead bring suit against a relatively small firm. It matters not. Provided it does not violate any other provision of law, Paramount is free to instigate legal action against whomever it wishes. For these reasons, the Court refuses to recognize a doctrine of estoppel by transitivity.

Defendants' reliance on *National Business Lists, Inc. v. Dun & Bradstreet, Inc.*, 552 F.Supp. 89 (N.D.Ill.1982) is unavailing. In that case, the plaintiff expressly permitted the allegedly wrongful conduct of both the defendant as well as other parties. The de-

---

**10.** The elements of estoppel in a copyright case are: (1) the plaintiff knew about defendant's wrongful conduct; (2) the plaintiff intended, or acted in such a way that the defendant had a right to believe plaintiff intended, to permit defendant's wrongful conduct, (iii) the defendant was ignorant of the true facts, and (iv) the defendant relied on the plaintiff's conduct to his detriment. *Lottie Joplin Thomas Trust v. Crown Publishers, Inc.*, 456 F.Supp. 531, 535 (S.D.N.Y. 1977) *aff'd*, 592 F.2d 651 (2d Cir.1978).

fendant's reliance, therefore, was based, at least in part, on plaintiff's acquiescence to the defendant's own conduct. In the instant case, Defendants are relying entirely on Paramount's conduct toward others. Defendants have therefore failed to document a prima facie case for their affirmative defenses. Accordingly, Paramount has established the likelihood of success on the merits of this case.

### B. IRREPARABLE INJURY

 Generally, when a copyright plaintiff makes out a prima facie showing of infringement, irreparable harm may be presumed. *ABKCO Music, Inc. v. Stellar Records, Inc.,* 96 F.3d 60, 64 (1996). The burden is then shifted to the defendant to rebut this presumption. In this case, Defendants have been unable to do so. Defendants' lone argument is that, if *The Joy of Trek* is later found to infringe on the Star Trek Properties, money damages would be a satisfactory remedy for Paramount. The Court is unpersuaded by this rationale. Allowing this argument to prevail would, in effect, make any copyright holder an involuntary licensor of the copyright to any entity that could be relied on to pay damages. *See Cadence Design Sys. Inc. v. Avant! Corp.,* 125 F.3d 824, 828 n. 8 (9th Cir.1997) *cert. denied,* —— U.S. ——, 118 S.Ct. 1795, 140 L.Ed.2d 936 (1998). Such a policy would considerably weaken the integrity of a copyrighted work. In sum, Paramount has the presumption of irreparable harm and Defendants have been unable to successfully rebut it. Accordingly, the Court determines that Paramount has made a satisfactory showing of irreparable harm.

### IV. *CONCLUSION*

For the aforementioned reasons, Paramount has successfully established a likelihood of success on the merits and irreparable harm. Accordingly, Paramount's motion for a preliminary injunction, enjoining Carol Publishing Group, Inc. and Sam Ramer, their agents, servants, employees, attorneys, successors, and assigns, and all persons, firms and corporations acting in concert with them, from printing, duplicating manufacturing, publishing, distributing, marketing, advertising, promoting, soliciting or accepting orders for, selling or offering for sale *The Joy of Trek* pending the final determination of this action, is hereby GRANTED upon Paramount posting a bond in the amount of $100,000 as a surety.

IT IS SO ORDERED.