Susan Nicholson HOFHEINZ, Plaintiff,

v.

A & E TELEVISION NETWORKS and Weller/Grossman Productions, Inc., Defendants.

No. 00 Civ. 0623(RWS).

United States District Court, S.D. New York.

June 27, 2001.

Gregory A. Sioris, New York City, for Plaintiff.

Dorsey & Whitney by Douglas C. Fairhurst, New York City, for Defendants.

## OPINION

SWEET, District Judge.

Defendants A & E Television Networks ("A & E") and Weller/Grossman Productions, Inc. ("Weller/Grossman") have moved for summary judgment pursuant to Fed.R.Civ.P.56 to dismiss the complaint of plaintiff Susan Nicholas Hofheinz ("Hofheinz") alleging copyright infringement of the film "It Conquered the World", portions of which were used in a biography of Peter Graves, aired on A & E. Because there is no genuine dispute as to the material facts in this case and the footage used in the A & E biography constitutes "fair use" under the Copyright Act, 17 U.S.C. § 107, the motion is granted.

### Parties and Prior Proceedings

A & E is a cable network, supplying a 24 hour schedule of programming to cable and satellite operators, who in turn supply the programming to their subscribers. A & E's programs consist of documentaries, off-network dramatic productions and original motion pictures. It derives its revenues largely from advertisers and fees charged for cable operator licenses.

Weller/Grossman is a California-based production company that produces documentaries, biographies and historical programs. Weller/Grossman produced the biography of Peter Graves which was aired by A & E giving rise to this action.

Susan Hofheinz owns the copyright to the 1956 science fiction film, "It Conquered the World". "It Conquered the World" stars Peter Graves in one of his earliest Hollywood performances as well as Beverly Garland, Lee Van Cleef and *Beulah,* the monster. The movie was produced by American International Pictures, whose principals were James Nicholson and Sam Arkoff. Mr. Nicholson is the late husband of Ms. Hofheinz.

The complaint in this action alleging infringement of the copyright in "It Conquered the World," by the defendants in producing and airing the biography of Peter Graves was filed on January 8, 2000. The instant motion was heard and marked fully submitted on March 28, 2001.

### Facts

The facts are derived from the parties' Rule 56.1 submissions and are undisputed.

On April 4, 1997, defendant A & E broadcast to its cable licensees, as part of its "Biography" series, the program, "Peter Graves: Mission Accomplished," a biography of the actor Peter Graves. The program was an hour long (with commercials) and produced by defendant Weller/Grossman.

Each of A & E's "Biography" programs deals with the life of some famous or well-known person, usually someone prominent in history, politics, business or the arts. The series has a narrator-host, either Jack Perkins or Peter Graves, and develops and treats the life of its subject through comment and brief interviews with persons who knew or have written about the person. The visual content of the series often includes photographs, film and audio-visual material when available.

Early into the Peter Graves biography, brief clips from several of his earliest mo-

tion pictures are shown—mid–1950's science fiction films with titles such as "Killers From Space" and "The Beginning of the End." Part of one of the clips used in the Peter Graves biography showed him in a motion picture released in the mid–1950's called "It Conquered The World," a science fiction movie in which he played a leading role as a scientist. This archival showing had a point, explained on camera by Graves: "You had to pay the rent and buy the groceries ... And also, I always felt that they or most anything else I did—was good training to get to learn more about acting."

The subject program, "Peter Graves: Mission Accomplished" is a biography. It was produced for a wide commercial audience and for profit, but a work that treats as its subject the life of a well-known television and motion picture actor. The Peter Graves biography is approximately 44 minutes long (60 minutes with commercials) and covers the formative years of his life and his career as a television and screen actor. The program narrator is "Biography" host Jack Perkins and Graves himself, members of his family and professional colleagues review the major achievements of his life. The program devotes considerable attention to Graves' work, starting with an account of his earliest efforts as a stage actor in college, moving through his first Hollywood films in the 1950's, his recognized performance in "Stalag 17" and then on to his television career in "Fury" and ultimately to "Mission Impossible," the motion picture "Airplane," and Graves as host of A & E's "Biography." Film clips and short pieces of videotape of Graves in these and other roles are employed to show Graves' development and versatility as an actor and his principal achievements; still photographs of Graves and his family, movie posters and shots of Hollywood in the late 1940's supply some of the background.

Made in 1956, "It Conquered the World" was one of Graves' earliest appearances in a Hollywood film. Graves played a scientist trying to stop a colleague and an alien invader (a Venutian named Beulah) from achieving their objective of world domination. Speaking generally of the mid–1950's science fiction genre, the "Biography" narrator explains, "While these pictures may seem campy by current standards, they were popular films at the time. And the young actor treated them as serious business." A short clip from "Killers From Space" follows, a few seconds more of Graves commentary and then 20 seconds from "It Conquered the World." In the case of "It Conquered the World," it was not the film itself that was shown, but rather 20 seconds of footage edited from a promotional trailer that had once presaged the film's booking in theaters. A "trailer" (or "preview of a coming attraction") is simply film footage of scenes in a motion picture shown in a theater a week or so in advance of the picture itself, usually with graphics and a voice-over promoting the movie. The clip shows Graves in short scenes, each lasting a few seconds, taken out of sequence from the film. The trailer carries an announcer's voice-over track and displays prominent graphics superimposed over the first few seconds of footage that identify the picture.

Hofheinz does not have an independent registered copyright in the trailer, and there is no allegation or evidence that there is any copyright in the trailer itself. The motion picture from which the trailer footage derived, however, was (and still is) copyrighted. Through a series of assignment and litigation in 1994, the movie became the property of Ms. Hofheinz. The movie runs about 70 minutes and although no longer available for rental in theatrical release or available for rental or purchase in the home videocassette market, plaintiff

does rent it for special showings and film festivals and has licensed footage from it.

There is no evidence that the trailer itself has ever been rented, but Hofheinz has asserted claims based upon its use and settled one several years ago with another television producer.

### Conclusions of Law

#### Summary Judgment Standard

Rule 56(c) of the Federal Rules of Civil Procedure provides that a motion for summary judgment may be granted when "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." The Second Circuit has repeatedly noted that "as a general rule, all ambiguities and inferences to be drawn from the underlying facts should be resolved in favor of the party opposing the motion, and all doubts as to the existence of a genuine issue for trial should be resolved against the moving party." *Brady v. Town of Colchester*, 863 F.2d 205, 210 (2d Cir.1988) (*citing Celotex Corp. v. Catrett*, 477 U.S. 317, 330 n. 2, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986) (Brennan, J., dissenting)); *see Tomka v. Seiler Corp.*, 66 F.3d 1295, 1304 (2d Cir.1995); *Burrell v. City Univ.*, 894 F.Supp. 750, 757 (S.D.N.Y.1995). If, when viewing the evidence produced in the light most favorable to the non-movant, there is no genuine issue of material fact, then the entry of summary judgment is appropriate. *See Burrell*, 894 F.Supp. at 758 (*citing Binder v. Long Island Lighting Co.*, 933 F.2d 187, 191 (2d Cir.1991)). Materiality is defined by the governing substantive law. "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). "[T]he mere existence of factual issues—where those issues are not material to the claims before the court—will not suffice to defeat a motion for summary judgment." *Quarles v. General Motors Corp.*, 758 F.2d 839, 840 (2d Cir.1985).

For a dispute to be genuine, there must be more than "metaphysical doubt." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249–50, 106 S.Ct. 2505 (citations omitted).

### The Inclusion of Brief Clips from "It Conquered the World" in the Peter Graves Biography constitute "Fair Use"

Based upon the standard discussed above, this case qualifies as one which can and should be resolved on summary judgment. Counsel for both sides have argued, as matters of emphasis and judgment, how the Court ought to weigh these facts in assessing the "fair use" exception to the Copyright Act, 17 U.S.C. § 107, but the material facts that bear on the analysis do not allow of dispute. As the court said in *Wright v. Warner Books, Inc.*, 953 F.2d 731, 735 (2d Cir.1991): "the mere fact that a determination of the fair use question requires an examination of the specific facts of each case does not necessarily mean that in each case involving fair use there are factual issues *to be tried.*"

The Copyright Act permits one, in certain circumstances, to use or appropriate a copyright proprietor's protected expression notwithstanding copyright protection. The concept is embodied in 17 U.S.C. § 107, which states that the "fair use" of a copyrighted work does not infringe the copyright in that work. As the court put it in *Maxtone–Graham v. Burtchaell*, 803 F.2d 1253, 1255 (2d Cir.1986): "The pur-

pose of fair use is to create a limited exception to the individual's private property rights in his expression—rights conferred to encourage creativity—to promote certain productive uses of copyrighted material."

Whether a given use is fair is determined on a case-by-case basis within the context of four factors enumerated in § 107. *See Harper & Row Publishers v. Nation Enterprises,* 471 U.S. 539, 105 S.Ct. 2218, 85 L.Ed.2d 588 (1985). The factors to be considered include:

(1) the purpose and character of the use, including whether the use is of a commercial nature or is for nonprofit educational purposes;

(2) the nature of the copyrighted work;

(3) the amount and substantiality of the portion used in relation to the copyrighted work as a whole;  and

(4) the effect of the use upon the potential market for or value of the copyrighted work.

17 U.S.C. § 107. Defendants carry the burden of showing that their infringing use was fair. *See Coleman v. ESPN, Inc.,* 764 F.Supp. 290 (S.D.N.Y.1991).

### *The Purpose and Character of the Use Tips in Favor of A & E*

■ The first statutory factor is the purpose and character of the allegedly infringing use. The focus of this factor is "whether the new work merely supersedes the objects of the original creation ... or instead adds something new, with a further purpose or different character, altering the first with new expression, meaning, or message;  it asks, in other words, whether and to what extent the new work

is 'transformative.' " *Campbell,* 510 U.S. at 579, 114 S.Ct. 1164 (citations omitted).

Here, A & E's biography of Peter Graves does not merely purport to supersede the original movie at issue, but to create a new copyrightable film biography. There is a strong presumption that this factor favors the defendant when the allegedly infringing work fits the description described in § 107 of "criticism, comment, news reporting, teaching ..., scholarship or research." The Court of Appeals summed up the application of this factor to works of biography: "our cases establish that biographies in general and critical biographies in particular, fit 'comfortably within' these statutory categories 'of uses illustrative of uses that can be fair.' " *New Era Publications Inter., ApS v. Carol Publishing Group,* 904 F.2d 152, 156 (2d Cir.1990) (*quoting Salinger v. Random House, Inc.,* 811 F.2d 90 (2d Cir.1987), *cert. denied,* 484 U.S. 890, 108 S.Ct. 213, 98 L.Ed.2d 177 (1987)). Defendants' "Peter Graves: Mission Accomplished" may not be a "scholarly" biography, but the use made of this particular footage from "It Conquered The World," to show the kind of motion picture roles Graves took when he first began his acting career and what his perception of them was, served to enrich the biography through the actor's perspective on his own work. This is one of the "fair use" purposes identified by the Court in *New Era Publications,* 904 F.2d at 156. Appearing in "It Conquered The World" was a fact of Graves' life. The 20 seconds of footage shown of that appearance in defendants' biography was not shown to recreate the creative expression reposing in plaintiff's film,[1] it was for the transformative purpose of enabling the

---

1. Contrast the "transformative" purpose here with the wholesale duplication of plaintiff's Star–Trek in *Paramount Pictures Corp. v. Carol Publishing Group,* 11 F.Supp.2d 329 (S.D.N.Y.1998), where fair use was rejected. (The defendant's book was substantially similar to plaintiff's TV series.)

viewer to understand the actor's modest beginnings in the film business.

Moreover, it was the same kind of transformative use recently found in *Hofheinz v. AMC Productions Inc.*, 147 F.Supp.2d 127 (E.D.N.Y.2001), a case with material undisputed facts and claims virtually identical to those implicated in this case, a use made not to supersede the original work, but to add something of value to the new work. *Hofheinz, supra* at 136. It matters not that the Peter Graves' biography was produced to entertain audiences; the use made of plaintiff's footage in the program was for the purpose of commenting on Graves and what he thought about a picture he appeared in. In fact, it was a use not much different from the one made by the defendant of approximately one minute of footage of plaintiff's copyrighted film on Muhammad Ali's title bout with George Foreman, in a television biography of Muhammad Ali called "Story." In *Monster Communications, Inc. v. Turner Broadcasting System, Inc.*, 935 F.Supp. 490 (S.D.N.Y.1996), the Court found without difficulty that the first "fair use" factor favored Turner because the alleged infringing work "Story" was a biography about a person of public interest that combined comment, criticism, scholarship and research. *Id.* at 494, *see also Wright, supra.* The result is the same here.[2]

### Nature of the Copyrighted Work

■ This is the second fair use factor, where the focus belongs on the nature and copyright status of the plaintiff's work.

As a general proposition, published works enjoy less fair use protection than those that have never been published; on the other hand, works that are creative or nonfactual are entitled to greater fair use protection than those that are factual. *See New Era Publications*, 904 F.2d at 157. Plaintiff's "It Conquered The World," was produced and released in the mid–1950's.[3] Thus, while there was no impact on plaintiff's right to control the first public showing of the film, or any portion of it, a factor that tips in defendants' favor, the film and the trailer are certainly "creative," not factual works and tips in plaintiff's favor. However, the film is not really in general circulation; when it is leased at all, it is for showings at science-fiction film festivals and the like. The trailer is not shown anymore at all. As the court noted in *Maxtone–Graham, supra*, where the plaintiff's work was out of print, "a key" though not necessarily determinative factor in fair use is whether or not the work is available to the potential user. If the work is out of circulation and unavailable for purchase through normal channels, the user may have more justification for reproducing it than in the ordinary case. *Maxtone–Graham, supra*, 803 F.2d at 1264 n. 8. When the court in *Monster Communications, supra*, had before it essentially the same two components of the second fair use factor, leaning in the same direction they do here, it called the factor "neutral." The Honorable Charles Sifton thought it "slightly" favored Ms. Hofheinz in her other suit, *Hofheinz, supra* at 138, but there was considerably more of her footage being

---

**2.** Nor, as the cases make clear, does it usually matter that the alleged infringing biography is a commercial work, intended by its publisher or producer to make a profit. *See Arica Institute, Inc. v. Palmer*, 970 F.2d 1067, 1078 (2d Cir.1992) and *Monster Communications*, 935 F.Supp. at 493. As the Court of Appeals put it: If a work falls into one of the fair use

categories, "assessment of the first fair use factor should be at an end, even though, as will often be the case, the defendants anticipated profits." *Wright*, 953 F.2d at 737.

**3.** The copyright registration for the film gives an original date of copyright as of July 26, 1956. (Fairhurst Dec., Exh. F).

used in that case. On balance this factor tips slightly in Hofheinz's favor.

### The Amount and Substantiality of the Portion Used

■ This factor cuts in defendants' favor. The determinative fact is the amount and substantiality of the material used in relation to the copyrighted work, a quantitative and qualitative test that in this case requires the court to look at the 20 seconds of footage excerpted from the 70 minute "It Conquered The World" and then again at what the 20 seconds consisted of. This constitutes less than 1% of the film, three short snaps not even in the same sequence as they appear in the motion picture. This was trailer footage, impossible to follow as a story line and telling us nothing about the film's plot, characters, themes, or resolution—just snippets of Graves in an alien monster film, people fleeing and Graves hitting a policeman. Reading such decisions as the ones in *Wright, supra,* 953 F.2d at 738; *New Era Publications,* 904 F.2d at 158, *Monster Communications, supra,* 935 F.Supp. at 495, and most recently, *Hofheinz, supra,* all of which found this third factor weighing heavily in favor of the defendant on similar fractional analyses and common sense qualitative judgments, makes plain that the Peter Graves' biography made a "fair use" of the trailer on this basis as well.

Hofheinz has argued that what was used was the qualitative "essence" of her movie. But quantitative and qualitative takings must not be confused as plaintiff has in her brief citing such cases as *Roy Export Co. v. Columbia Broadcasting System,* 672 F.2d 1095 (2d Cir.1982) and *Nihon Keizai Shimbun, Inc. v. Comline Business Data, Inc.,* 166 F.3d 65 (2d Cir.1999). Such cases are inapposite. The 20 seconds of "It Conquered The World" shown in the Graves' biography are enough to give a viewer an idea of the absurdity of the pictures Graves was appearing in, three clips out of sequence, telling us nothing else. It was not the wholesale taking of an entire film compilation (*Roy Export*) or the reconfiguration of entire articles into another medium. (*Nihon Keizai*).[4] Nor is it even close to the whole sale taking of a compilation of movie clips from 12 Laurel & Hardy films plus a Laurel & Hardy still photograph on the package of the defendants' video ("The Legends of Comedy") in *Richard Feiner & Company, Inc. v. Passport International Productions Inc.,* 1998 WL 437157 (S.D.N.Y.1998). It is not evident that fair use was even suggested in that case. This factor favors A & E.

### Effect on the Market

■ This aspect of the fair use analysis addresses the effect of the use upon the potential market for or value of the copyrighted work, what the Supreme Court referred to as "undoubtedly the single most important element of fair use." *Harper & Row Publishers,* 471 U.S. at 566, 105 S.Ct. 2218. The copyrighted work here is plaintiff's film, "It Conquered The World" from which the trailer footage derives. The film had its theatrical run in the mid–1950's, and is today rented for film festivals and special showings. It is not being sold or rented to the public in the videocassette market and though there is a small market for pieces of footage from the film (plaintiff entered into five licenses of this kind over the past seven years),

---

4. Nor was it the taking of an entire photographic work to create a video montage of National Geographic covers for a CD–ROM library, which the Court found to have "far transcended" a fair use in *Greenberg v. National Geographic Society,* 244 F.3d 1267 (11th Cir.2001).

plaintiff does not advertise or promote the film. From all it appears, there is, at best, sporadic interest in pieces of footage, *sui generis* to the potential user who wants to use a few frames in a television program and avoid suit by plaintiff. Certainly, there is no reason—or evidence—on which to conclude that those who actually saw the only two showings of "Peter Graves: Mission Accomplished" that A & E ever broadcast, both back in April 1997, are now disinclined to see plaintiff's film. As Judge Sifton noted with respect to the AMC documentary that employed brief clips of Ms. Hofheinz's films, they were "too few, too short, and too small in relation to the whole" to undercut the market for plaintiff's copyrighted works, *citing Monster Communications. Hofheinz, supra* 147 F.Supp.2d at 140. If anything, they likely spurred interest in the film.

Hofheinz also contends that there is a market for motion picture excerpts, which is separate from the market for the motion picture itself. The Defendants do not dispute that Hofheinz has licensed clips from several films she owns, nor do they dispute there is a market generally for motion picture clips. But no evidence has been presented that the two April 1997 cablecasts of the Peter Graves biography have any impact on the market for clips of "It Conquered the World."

The proper question is whether the Graves biography was, in effect, a substitute for Hofheinz's film clips. *See Wright v. Warner Books, Inc.,* 953 F.2d 731, 739 (2d Cir.1991) (defendant's biography of Richard Wright in no way supplants plaintiff's letters) and *Arica v. Palmer,* 970 F.2d 1067, 1078 (2d Cir.1992) (where marginal amounts of expressive content were taken, impairment of the market is unlikely.) Plaintiff may not boot-strap the specter of a fair use holding against her here,

on the facts of this case, as reason why the use was not a fair use to begin with. This circularity was addressed by Judge Sifton in Hofheinz's earlier infringement suit in *Hofheinz v. AMC Productions Inc.,* 147 F.Supp.2d 127 (E.D.N.Y.2001). Hofheinz made the same adverse impact claim in that case and Judge Sifton noted that "plaintiff's argument, if carried to its logical conclusion, would eviscerate the affirmative defense of fair use since every copyright infringer seeking the protection of the fair use doctrine could have potentially sought a license from the owner of the infringed work." *Id.* at 140. As Judge Sifton noted, "the question is what effect will the exhibition of defendant's [work] have on the demand for plaintiff's infringed works themselves, not the effect the [work] will have on her ability to license those works in the future." *Hofheinz v. AMC,* 147 F.Supp.2d 127, 140 (E.D.N.Y.2001).

On this point, Hofheinz forwards a corollary argument that the defendants represented to the world that the plaintiffs' clips were in the public domain, and therefore damaged the market. However, the source of the clips is prominently displayed in the biography as the film, "It Conquered the World."

The Graves biography is not a substitute for the film clips and therefore, did not impact the market for the clips. This factor favors A & E as well.

### Conclusion

For the reasons stated, A & E's motion for summary judgment is granted.

It is so ordered.