**MERKOS L'INYONEI CHINUCH, INC., Plaintiff,**

v.

**"JOHN DOE NOS. 1–25" and Mendel Sharf, Defendants.**

**No. 01–CV–6711 (FB).**

United States District Court, E.D. New York.

Nov. 9, 2001.

Ronald W. Meister, Cowan, Liebowitz & Latman, P.C., New York City, for Plaintiffs.

Peretz Bronstein, Bronstein, Gewirtz & Grossman, LLC, New York City, for Defendants.

### MEMORANDUM AND ORDER

BLOCK, District Judge.

Plaintiff ("Merkos") moves for a preliminary injunction against defendants to preclude them from "any further manufacture, reproduction, or distribution" of copies of the copyrighted compilation of twenty-three volumes of the letters of the

late Lubavitcher Rebbe, Menachem M. Schneerson ("the Rebbe's letters"), which are reverently known as the Igrois Koidesh ("Holy Letters"). Plaintiff's Post–Hearing Memorandum at 12.[1] On October 18, 2001, the Court granted a Temporary Restraining Order ("TRO") to that effect. On October 25, 2001, the Court held a preliminary injunction hearing, after which it extended the TRO for ten more days. The Court now makes the following findings of fact and conclusions of law pursuant to Fed.R.Civ.P. 52(a).

## FINDINGS OF FACT

1. Merkos is a New York not-for-profit religious corporation. Since its inception in 1942, Merkos, through its wholly controlled Kehot Publishing Society ("Kehot") division, has been the publishing arm of the Chabad–Lubavitch Chasidic movement ("Chabad–Lubavitch"). As such, it sells worldwide a substantial catalogue of books, pamphlets, magazines and other materials. For the purposes of this decision, Merkos and Kehot are deemed one and the same.

2. The defendant, Mendel Sharf ("Sharf" or "defendant") is a religious student. The defendants John Does Nos. 1–25 purportedly are other religious students. They are presently unidentified and are not yet parties to this litigation.

3. From 1950 until 1994, the Rebbe was Chabad–Lubavitch's leader. He was a prolific writer of letters on a broad scope of topics, ranging from mysticism, Jewish law and philosophy, to science, world events, social affairs and personal matters.

4. Merkos, through its employees and with the consent of the Rebbe, selected, edited, compiled and annotated the twenty-three volumes of the Rebbe's letters. The first volume was completed in 1987, the last in 1999. The parties do not dispute,

and the Court so finds, that Merkos owns valid copyrights in each volume of the Rebbe's letters.

5. In his will, the Rebbe bequeathed all his intellectual property rights to Merkos.

6. Merkos, in Kehot's name, has obtained a registration certificate, number TX 5–384–890, issued by the United States Copyright Office on October 5, 2001, in the "selection, editing and compilation" of each volume of the Rebbe's letters.

7. On September 6, 2001, Merkos learned that Sharf was advertising for sale a "New & Improved Edition" ("Sharf's edition") of the twenty-three volumes of the Rebbe's letters on flyers posted around Lubavitch headquarters in Brooklyn. That day, Sharf entered the headquarters and sold a number of sets of his edition for $150.00 per set. Sharf's edition was identical to Merkos's volumes of the Rebbe's letters in every respect except the following:

(a) The covers of Merkos's volumes of the Rebbe's letters bear an inscription recognizing that the Rebbe has passed away. Sharf's edition did not bear this inscription.

(b) Sharf inserted an extra page of text in the back of his edition. This extra page contains a message proclaiming that the Rebbe lives.

(c) Merkos's volumes of the Rebbe's letters have speckled edges; Sharf's edition had plain edges.

8. Sharf and the other putative defendants hold the heartfelt belief that, notwithstanding his physical passing in 1994, the Rebbe still lives. Those authorized to act on behalf of Merkos in respect to the copyrighted volumes of the Rebbe's letters do not share this belief about the Rebbe.

1. Merkos requests that the preliminary injunction also include an order that defendants surrender all unsold copies of the Rebbe's letters.

9. Sharf has never obtained authorization from Merkos to copy or distribute its copyrighted volumes of the Rebbe's letters.

10. Sharf has made a number of other sales of his edition since September 6, 2001, and has advertised his edition in the magazine Beis Moshiach. There are approximately 1500 to 1300 unsold sets of Sharf's edition.

## CONCLUSIONS OF LAW

■ To succeed on a motion for a preliminary injunction, plaintiff has to demonstrate (1) either a likelihood of success on the merits, or that the merits present serious questions for litigation and the balance of hardships tips decidedly toward the plaintiff; and (2) that without the injunction, plaintiff will suffer irreparable harm before the Court can rule on its claim. *See TCPIP Holding Co., Inc. v. Haar Communications, Inc.*, 244 F.3d 88, 93 (2d Cir.2001); *Fisher–Price, Inc. v. Well–Made Toy Manufacturing Corp.*, 25 F.3d 119, 122 (2d Cir.1994).

### A. *Likelihood of Success*

■ "To prevail on a claim of copyright infringement, the plaintiff must demonstrate both (1) ownership of a valid copyright and (2) infringement of the copyright by the defendant." *Yurman Design, Inc. v. PAJ, Inc.*, 262 F.3d 101, 108 (2d Cir. 2001); *see also Hamil America, Inc. v. GFI*, 193 F.3d 92, 98 (2d Cir.1999).

■ Merkos's selection, editing, compilation and annotation of the Rebbe's letters ("the compilations") constitute protectable derivative works. *See Feist Publications, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 348, 111 S.Ct. 1282, 113 L.Ed.2d 358 (1991); *Yurman*, 262 F.3d at 109; *Lipton v. Nature Co.*, 71 F.3d 464, 470 (2d Cir.1995). "A derivative work is defined as one 'based upon one or more preexisting works .... A work consisting of editorial revisions, annotations, elaborations, or other modifications which, as a whole, represent an original work of authorship, is a derivative work.' " *Campbell v. Acuff–Rose Music, Inc.*, 510 U.S. 569, 576 n. 4, 114 S.Ct. 1164, 127 L.Ed.2d 500 (1994) (internal quotation marks omitted) (quoting 17 U.S.C. § 101).

Under the Copyright Protection Act of 1976, copyright protection attaches once the work is fixed in some tangible form, such as the compilations, regardless of whether the copyright is registered or the work is published. *See* 17 U.S.C. § 102(a). Thus, Merkos became the holder of the copyrights in the compilations as the compilations were completed.

■ The subsequent registration of the volumes of the Rebbe's letters was necessary to institute this action since "[t]he Copyright Act requires that 'no action for infringement of the copyright in any ... work shall be instituted until registration of the copyright claim has been made ....' " *Morris v. Business Concepts, Inc.*, 259 F.3d 65, 68 (2d Cir.2001) (quoting 17 U.S.C. § 411(a)).

■ "A plaintiff with a valid copyright proves infringement by demonstrating that: (1) the defendant actually copied the plaintiff's work; and (2) the copying is illegal because a substantial similarity exists between the defendant's work and the ... plaintiff's." *Fisher–Price*, 25 F.3d at 122–23; *see also SmithKline Beecham Consumer Healthcare, L.P. v. Watson Pharmaceuticals, Inc.*, 211 F.3d 21, 26 (2d Cir.2000). A plaintiff may also prove copyright infringement by showing that a defendant has, without authorization, "publishe[d], s[old], or otherwise use[d]" the plaintiff's work. *Waldman Publishing Corp. v. Landoll*, 43 F.3d 775, 781 (2d Cir.1994).

■ Sharf does not contest that he "actually copied the plaintiff's work." *Fisher–Price*, 25 F.3d at 122. Sharf's edition consists of unaltered photocopies of Merkos's volumes of the Rebbe's letters, with the limited exceptions previously noted; therefore, Merkos has demonstrated that there is "a substantial similarity ... between the defendant's work and the plaintiff's." *Id.* at 122–23. As to Merkos's right to control the use of its volumes of the Rebbe's letters, Sharf argues that the Rebbe intended "that his letters be freely disseminated, not repressed." Defendant's Post–Hearing Memorandum at 5. Merkos is not suppressing the Rebbe's letters—it is publishing them for sale to the public.

The Court recognizes that Sharf and others like him, consistent with their heartfelt belief about the Rebbe, consider it imperative to make available a modified version of the Rebbe's letters—with the different cover and the extra page of text. Merkos does not approve of such use of its copyrighted work. As the owner of the copyright in the volumes of the Rebbe's letters, Merkos has the right to control the form and presentation of its copyrighted work. *See Gilliam v. American Broadcasting Cos.*, 538 F.2d 14, 21 (2d Cir.1976) ("[T]he ability of the copyright holder to control his work remains paramount in our copyright law."); *see also Waldman*, 43 F.3d at 781; *Scholastic, Inc. v. Stouffer*, 124 F.Supp.2d 836, 845 (S.D.N.Y.2000). Sharf's unauthorized copying, alteration and distribution of Merkos's volumes constitutes an infringement of Merkos's right, as the copyright holder, to control its work.

Sharf argues that he received authorization to make copies of and distribute the Rebbe's letters from a Merkos board member, Rabbi Sholom M. Simpson. The evidence does not support this claim. Even assuming that Rabbi Simpson authorized Sharf's copying and distribution, Rabbi Simpson was not authorized to act on behalf of Merkos or Kehot.

■ The Court notes that under 17 U.S.C. § 204(a), a purported transfer of copyright ownership, such as the creation of a license, is invalidated unless it is in writing. *See Playboy Enterprises, Inc. v. Dumas*, 53 F.3d 549, 563 (2d Cir.1995). No such writing has been presented by Sharf. In certain situations, there is a narrow exception to § 204(a)'s writing requirement for nonexclusive licenses created by implied conduct. *See Effects Assoc. v. Cohen*, 908 F.2d 555, 558 (9th Cir.1990) (Kozinski, J.); *Encyclopedia Brown Productions, Ltd v. Home Box Office*, 91 Civ. 4092, 1998 WL 734355 (S.D.N.Y. Oct.15, 1998). Courts have found this exception applicable where parties have closely collaborated or engaged in joint projects. For example, in *Effects Assoc.*, "plaintiff created a work at defendant's request and handed it over, intending that defendant copy and distribute it." *Effects Assoc.*, 908 F.2d at 558. Sharf has not offered any proof of any such collaboration or joint projects, or that Merkos compiled the volumes of the Rebbe's letters and handed them over to Sharf with the intention that he copy and distribute them.

Sharf does not raise fair use or derivative work defenses. Even if they had been raised, such defenses would fail.

■ A fair use defense would be unavailing because Sharf has copied Merkos's volumes of the Rebbe's letters in their entirety. *See Harper & Row Publishers, Inc. v. Nation Enterprises*, 471 U.S. 539, 565, 105 S.Ct. 2218, 85 L.Ed.2d 588 (1985) (fair use defense inapplicable where copied passages made up " 'heart of book' "); *Salinger v. Random House*, 811 F.2d 90, 98 (2d Cir.1987) (fair use defense inapplicable where defendant closely paraphrased series of copyrighted personal letters).

Although Merkos's compilations of the Rebbe's letters clearly constitute a copyrightable derivative work, the same cannot be said of Sharf's edition because Sharf has appropriated Merkos's copyrighted compilations in their entirety and added just a few modifications. "Copyright protection is unavailable for ... derivative works ... unless, when analyzed as a whole, they display sufficient originality so as to amount to an 'original work of authorship.'" *Matthew Bender v. West Publishing Co.*, 158 F.3d 674, 680 (2d Cir.1998) (quoting 17 U.S.C. § 101).

Accordingly, the Court concludes that Merkos has established "a likelihood of success on the merits" on its claim for copyright infringement.

### B. *Irreparable Harm*

 "Normally, when a plaintiff has established a *prima facie* showing of copyright infringement, irreparable harm is presumed; this is because the confusion created in the marketplace will damage the copyright holder in incalculable and incurable ways." *Fisher–Price*, 25 F.3d at 124; *see also Richard Feiner and Co., Inc. v. Turner Entertainment Co.*, 98 F.3d 33, 34 (2d Cir.1996); *Twentieth Century Fox Film Corp. v. Marvel Enter., Inc.*, 155 F.Supp.2d 1, 48 (S.D.N.Y.2001). The burden then shifts to the defendant to rebut this presumption. *See, e.g., Paramount Pictures Corp. v. Carol Publishing Group*, 11 F.Supp.2d 329, 338 (S.D.N.Y.1998)

Sharf, relying on *New Era Publications Int'l v. Henry Holt and Co.*, 695 F.Supp. 1493, 1525 (S.D.N.Y.1988), argues that irreparable harm should not be assumed where the infringement is intended to disseminate important religious doctrine, not to achieve profit. *New Era* involved a successful fair use defense where a biographer of L. Ron Hubbard simply included some excerpts from Hubbard's copyrighted letters in a critical biography. The

court found that the portions copied were "insignificant." *Id.* Here, Sharf has copied Merkos's volumes of the Rebbe's letters in their entirety and, hence, *New Era* is inapplicable.

Accordingly, the Court concludes that Sharf has not rebutted the presumption of irreparable harm.

### CONCLUSION

The Court is sensitive to and respects the religious beliefs of Sharf and like-minded members of his religious community. However, the Court is constrained to uphold the copyright laws. Because Sharf's edition of the Rebbe's letters, on the present facts, infringes Merkos's copyright, Merkos is entitled to a preliminary injunction.

Sharf and "[his] officers, agents, servants, employees, and attorneys, and ... those persons in active concert or participation with [him] who receive actual notice of [this] order by personal service or otherwise" are hereby preliminarily enjoined from further reproduction, manufacture, or distribution of Sharf's edition of volumes one through twenty-three of the Rebbe's letters, including distribution of the unsold volumes of Sharf's edition. Fed.R.Civ.P. 65(d)

Pursuant to Fed.R.Civ.P. 65(c), Merkos, within 10 days of this order, shall post a bond of $1000 with the Clerk of the Court.

**SO ORDERED.**